THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ARTHUR DeLISLE, Defendant-Appellee.

First District (1st Division)    No. 80-2386

Opinion filed February 1, 1982.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Warren A. Zimmerman, and Sandra M. Stavropoulos, Assistant State's Attorneys, of counsel), for the People.

Anthony J. Onesto and Joseph M. Giglio, both of Onesto, Giglio & Associates, of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

Following his arrest for possession of cocaine, defendant moved to quash the search warrant and suppress the evidence. The trial court granted defendant's motion. The State now appeals.

The issues on appeal are: (1) whether the investigatory stop of defendant was proper; and (2) whether defendant voluntarily surrendered his travel bag.

We affirm.

Arthur DeLisle (defendant) arrived at O'Hare Airport on a commercial airline flight from Fort Lauderdale, Florida, at 12:05 a.m. on June 4, 1980. As he disembarked from the airplane, defendant was observed by Investigator Thomas Kinsella, who was present at the airport for the purpose of detecting unlawful narcotics traffic. Defendant was the first passenger to exit the plane. When he arrived in the concourse area, defendant looked up and down the concourse several times. He walked to a pay telephone, placed a brief call and then proceeded toward the baggage area. Defendant stood for approximately five minutes scanning the baggage area. After he retrieved his travel bag, he walked speedily toward the exit door.

Kinsella approached defendant and identified himself as a police officer. At this point, Kinsella was joined by other surveillance officers. Kinsella asked defendant for some identification and his airline ticket. Defendant produced an Illinois driver's license in his own name and told the officers he did not have his airline ticket. Kinsella claims that defendant was nervous and visibly shaking as he took his driver's license from his wallet. Kinsella asked defendant if he would consent to a search of his bag. Defendant refused. Kinsella told defendant that he would have to seize the bag and give defendant a receipt for the bag.

Defendant telephoned his attorney, who informed defendant that unless the officer had a search warrant, he was not required to surrender the bag. Defendant told the attorney that the officers would arrest him if he did not turn over the bag. The attorney told defendant that if he had no other choice, then he should surrender the bag and obtain a receipt.

Defendant relinquished his travel bag and left the airport. Kinsella placed defendant's bag in a room with five other pieces of luggage. A certified dog handler ordered a narcotics dog to find narcotics. The dog sniffed the luggage and attempted to bite defendant's travel bag. Based on the dog's positive reaction, Kinsella obtained a search warrant. Cocaine was found in defendant's travel bag, and defendant was charged with possession of cocaine. Ill. Rev. Stat. 1979, ch. 56½, par. 1402.

On August 11, 1980, defendant made a motion to quash the search warrant and suppress the evidence. The trial court found that the seizure in the original instance was illegal and, therefore the search warrant was

invalid and evidence obtained pursuant to that warrant was inadmissible. The State appeals.

First, we must consider whether Investigator Kinsella's investigatory stop of defendant was proper. Such a stop is proper if a police officer can point to specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880; Ill. Rev. Stat. 1979, ch. 38, par. 107—14.) There are no *per se* rules for determining whether an investigatory stop is justified. Each case must be decided on its own facts. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 509-10, 29 L. Ed. 2d 564, 608, 91 S. Ct. 2022, 2060; *People v. Kelly* (1979), 76 Ill. App. 3d 80, 84, 394 N.E.2d 739.

In the present case, Officer Kinsella's suspicion was founded on the following facts: (1) defendant arrived on a 12:05 a.m. flight from Fort Lauderdale, a known source city for cocaine for Chicago; (2) he was the first passenger to exit the airplane; (3) after he disembarked from the plane, defendant looked up and down the concourse; (4) he went to a telephone, again looked up and down the concourse and then placed a brief phone call; (5) while walking toward the main terminal, he repeatedly looked over his shoulder; (6) he boarded an escalator and continued to look behind; (7) he stood at the baggage area looking at all the people in the area for approximately five minutes without retrieving his bag; (8) when he retrieved his small travel bag from the luggage rack, he quickly walked toward the exit door; (9) he appeared to be nervous and was visibly shaking when he produced his driver's license pursuant to Kinsella's request; (10) when Kinsella asked for a copy of his airline ticket, defendant said he did not have one.

The State argues that defendant exhibited conduct which conformed to the so-called "drug courier profile" and, therefore, an investigatory stop was warranted. The State points to four characteristics as being indicative of criminal activity: nervousness, walking rapidly from the baggage area; arrival from a source city; and possession of limited luggage.

We believe that many persons who are not drug couriers exhibit these same characteristics. (See *Reid v. Georgia* (1980), 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (per curiam).) Nervousness is characteristic of many innocent travelers, especially where they are anticipating the arrival of family or friends. (See *United States v. Andrews* (6th Cir. 1979), 600 F.2d 563.) Similarly, the anticipation of a reunion with family or friends explains why many travelers walk rapidly toward the exit after retrieving their baggage. Travelling from Fort Lauderdale, Florida, cannot be regarded as suspicious. Although it is a major narcotics distribution center, the probability that any given passenger from a source city is a

drug courier is infinitesimally small. (See *United States v. McCaleb* (6th Cir. 1977), 552 F.2d 717.) Travelling with a single bag is also very common. See *United States v. Ballard* (5th Cir. 1978), 573 F.2d 913.

■■ These facts, when considered individually or in combination, do not distinguish defendant from many other travelers. Officer Kinsella's stop, based on these facts, was an arbitrary and oppressive interference with defendant's privacy. We conclude that Kinsella did not have a reasonable suspicion to stop defendant and, therefore, the stop was in violation of the fourth amendment.

■■ Relying on *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, the State argues that the encounter between Kinsella and defendant was not a seizure and, therefore, need not rest on any fourth amendment safeguards. On facts very similar to those in the instant case, Justice Stewart found in *Mendenhall* that "respondent had [no] objective reason to believe that she was not free to end the conversation in the concourse and proceed on her way, and for that reason we conclude that the agents' initial approach to her was not a seizure." (446 U.S. 544, 555, 64 L. Ed. 2d 497, 510, 100 S. Ct. 1870, 1878.) Since only one other justice concurred with Stewart on the seizure issue, we are not required to follow Justice Stewart's finding that a seizure did not take place.

Next, the State argues that defendant voluntarily surrendered his travel bag. Voluntariness is a determination to be made from the totality of all the circumstances. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 36 L. Ed. 2d 854, 863, 93 S. Ct. 2041, 2048.) It is a matter which the government has the burden of proving. (*Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1792.) The government's burden is much heavier where, as here, the consent was given after an impermissible stop. *United States v. Ballard* (5th Cir. 1978), 573 F.2d 913.

In the present case, Investigator Kinsella asked defendant whether he would consent to a search of his bag and advised him that he had the right not to consent. When defendant exercised that right, Kinsella informed him that he would seize the bag and then obtain a search warrant. Defendant was permitted to call his attorney. Defendant told his attorney that he had been stopped by narcotics officers and that those officers had made it clear to him that if he did not voluntarily turn over his travel bag, he would be arrested. Acting on his attorney's advice, defendant surrendered the bag to Kinsella.

■■ Defendant's telephone conversation with his attorney reveals that he believed he had to surrender the bag or he would be arrested. Although he may have misapprehended his legal rights, as a practical matter he had no choice other than to surrender the bag. We believe that his "consent"

cannot be considered to have been given voluntarily. Since the trial court's determination in this matter was not clearly erroneous, we decline to overturn its decision on appeal.

The State raises three additional issues which we need not address in light of our affirmance of the trial court's judgment on the investigatory stop issue and the consent issue.

For the foregoing reasons, we affirm the order of the circuit court of Cook County.

Order affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.