THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RONALD STECKHAN, Defendant-Appellee.

First District (5th Division)   No. 82—216

Opinion filed July 15, 1983.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Defendant, Ronald Steckhan, was charged by information with possession of a controlled substance with intent to deliver. (Ill. Rev.

Stat. 1979, ch. 56½, par. 1401(a)(2).) He filed motions to quash the search warrant and suppress evidence seized. After an evidentiary hearing, those motions were granted. On appeal (87 Ill. 2d R. 604(a)(1)), the State asserts that the trial court erred when it granted defendant's motions.

Although no appellee's brief has been filed, this will not affect our review of this matter. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Defendant testified that at 3:30 p.m. on June 16, 1981, he arrived at O'Hare Airport. As he walked through the doors to the baggage claim section, he was stopped by Officer Rosemary Burzinski and Agent Bob Fulkerson. Agent Fulkerson placed his hand under defendant's arm and asked if he would step over to the side. Both officers then identified themselves and displayed their badges. The officers did not tell him that he was free to leave and he did not believe that he could do so. They asked for his identification and airline ticket. They also told him he matched a description, but did not indicate what description. They then advised him that they wanted to search his luggage which they took and opened. Next, they removed a box from inside his luggage.

Rosemary Burzinski testified that she is an officer for the Chicago police department who works in the narcotics division and is stationed at O'Hare Airport. At 3 p.m. on June 16, 1981, she and Federal Agent Bob Fulkerson of the Drug Enforcement Administration, working in civilian clothes, monitored Delta flight 458 arriving from Fort Lauderdale, Florida. The officer identified Fort Lauderdale as a "source city," *i.e.*, one of the key cities from which narcotics are distributed. Defendant was the last passenger to exit the plane. The officer claimed that defendant walked slowly as he entered the concourse area and looked over his shoulder. He proceeded down the American Airlines' escalator to the American Airlines' baggage claim area. From there he walked to the Delta Airlines' baggage claim area where he retrieved an attache case and brown suitcase. He gave the security guard two claim tickets and proceeded toward the exit. Officer Burzinski and Agent Fulkerson then walked alongside defendant, identified themselves, and asked to speak with him. He gave them an expired Illinois driver's license for identification and a copy of his airline ticket. Inside his wallet was a large amount of currency. The ticket had been purchased for cash on the day of the flight. According to Officer Burzinski, the defendant, who was "visibly shaking," stated that he had been on a two-day vacation in Florida. A young girl then appeared, spoke to defendant and remained near him while the offi-

cers informed defendant that they were conducting a drug investigation and that he was not under arrest but was free to leave. They then asked him more questions. He informed them that he was self-employed in the construction business and had never been arrested. The officers asked if they could open his luggage and he agreed. Neither piece of luggage contained clothes. However, inside the attache case was a package wrapped in brown paper, tape and string and addressed to Eric Steckhan. Defendant stated that the package contained shells and he did not mail it because he did not have enough money for additional postage. A man in his fifties then appeared at the doors near the baggage claim area and made eye contact with defendant before leaving. The defendant refused the officers' request to open the brown package. They then said they would take it to the customs area and let a dog sniff it for narcotics and that defendant could wait for the package or accept a receipt for it. He accepted the receipt, and left the airport with the other man. Several hours later, the officers obtained a search warrant and opened the package.

Don Steckhan testified that he is defendant's father. On June 15, 1981, defendant called him from Florida and told him he would arrive the next day at O'Hare Airport, and he made arrangements to pick defendant up. When the witness and his 17-year-old daughter, Connie, arrived at the airport, they could not find a parking space. Connie entered the terminal to locate defendant while the witness remained in the car. Shortly thereafter, a police officer permitted the witness to park for a few minutes while he entered the terminal to locate defendant and Connie. When the witness proceeded to the baggage claim area, he observed defendant and Connie with a man and a woman. The witness then returned to his car.

Now, the State contends that the police properly detained defendant's parcel for a cocaine sniff where the preceding stop disclosed articulable facts upon which the officers would reasonably conclude that the parcel contained narcotics. A trial court's finding on a motion to suppress will not be disturbed unless it is manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.) An investigatory stop of an individual is proper where police officers can identify specific and articulable facts which when combined together with rationale inferences reasonably warrant the intrusion. (*People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.) The purpose of this standard is to protect individuals from intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches. (*People v. McMullen* (1980), 82 Ill. App. 3d 1042, 403 N.E.2d 539.) A seizure occurs whenever a police officer accosts an individual

and restrains his freedom to walk away. (*People v. Kiser* (1983), 113 Ill. App. 3d 501, 447 N.E.2d 858.) Voluntariness is a determination to be made from the totality of all the circumstances. *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954.

A review of the record herein discloses that when the officers initially confronted defendant, they committed a *Terry* investigatory stop. We note that the United State Supreme Court recently considered two cases that are somewhat similar, but distinguishable from the instant matter. They are *Florida v. Royer* (1983), 460 U.S. ____, 75 L. Ed. 2d 229, 103 S. Ct. 1319, and *United States v. Place* (1983), 462 U.S. ____, 77 L. Ed. 2d 110, 103 S. Ct. 2637. Both cases involved investigatory stops at the Miami International Airport.

In *Florida v. Royer*, the defendant Mark Royer, was observed at the airport by two detectives from Dade County, Florida, who were working on a narcotics detail. The detectives determined that Royer met the "drug courier profile," that is, an abstract of characteristics associated with persons who transport illegal drugs. The characteristics allegedly displayed by Roger are as follows: (1) that he carried American Tourister luggage, which appeared to be heavy; (2) that he was young and casually dressed; (3) that he appeared pale and nervous; (4) that he looked at other people; (5) that he paid for his ticket in cash with a large number of bills; and (6) that he failed to complete the airline identification tag attached to his baggage which had space for a name, address and telephone number, but simply wrote the name, "Holt," and the destination "LaGuardia."

When the officers confronted Royer as he walked through the concourse, he provided his correct name and stated that a friend made the reservation in the name Holt. The officers informed him that he was suspected of transporting narcotics. He appeared to become more nervous as the conversation continued. The officers removed him to a small room adjacent to the concourse and used his airline ticket and other identification to claim his luggage. They opened one suitcase with a key he surrendered, but pried open another piece of luggage.

While the Supreme Court found that law enforcement officials do not violate fourth amendment rights by stopping an individual in a public place and questioning him, the court affirmed the Florida District Court of Appeals order which granted Royer's motion to suppress evidence. The Supreme Court found that the police officials exceeded the limits of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, when they detained him and that his surrender of the key to his luggage, while consensual, was tainted by the illegality of his detention and was ineffective to justify the subsequent search.

The court also rejected Florida's contention that any individual who carries two pieces of heavy luggage, purchases an airline ticket to a target city with cash, travels under an assumed name and appears nervous may be arrested and held to answer a serious felony charge.

In *United States v. Place*, the suspicion of law enforcement officers at the Miami airport was aroused by certain undisclosed behavior of defendant, Raymond Place, as he stood in line to purchase an airline ticket. Place complied when the officers requested his airline ticket and identification. However, because his flight was ready to depart, they did not search his luggage. As they parted, Place indicated he recognized them as officers prior to the stop. The officers then inspected the address tags on his checked luggage and noted discrepancies in the street address. They called Drug Enforcement Administration agents in New York to relay their information regarding Place.

When Place arrived at LaGuardia Airport and claimed his luggage, agents stopped him, again on the basis of unarticulated, but suspicious behavior. When they identified themselves, Place replied that he knew that they were "cops" and that his luggage had been searched in Miami. The agents completed a computer examination of his license and identification and determined that he did not have a criminal record. However, they then asked if they could search his luggage and he refused.

They issued him a receipt, and took his luggage to Kennedy Airport for a "canine sniff." Ninety minutes after the agents' initial stop of Place, the dogs reacted positively to one of his pieces of luggage retained by the agents. Because it was late on a Friday afternoon, the agents held the luggage until Monday, when they obtained a search warrant from a magistrate. Upon opening Place's luggage they found 1,125 grams of cocaine.

In *Place*, the court concluded that when a law enforcement official's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the official to detain luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope. However, the court held that the detention of Place's luggage went beyond the narrow authority possessed by the police to detain luggage reasonably suspected to contain narcotics.

The evidence discloses that the stop in the instant case was based on factors that are more tenuous than those in *Royer* and *Place*. Here, the defendant was apparently stopped because he was the last passenger to deboard the plane, was young, walked slowly

through the concourse, looked over his shoulder, and his flight originated in a source city. The officers did not have specific articulable facts, but acted merely on a hunch when they stopped defendant. The fact that defendant was traveling from Fort Lauderdale cannot be regarded as suspicious. (See *People v. Kiser.*) Further, nervousness is a characteristic of many innocent travelers. (*People v. DeLisle.*) Thus, the initial stop of defendant was arbitrary and an unacceptable obtrusive violation of his privacy. Additionally, while defendant surrendered the luggage and package to the officers, it cannot be inferred that this conduct was of his own volition. Also, he had no choice but to leave the package with the officers. Thus, we cannot conclude that the trial court's decision to grant defendant's motions were manifestly erroneous.

Accordingly, the order of the circuit court of Cook County is affirmed.

Judgment affirmed.

LORENZ and MEJDA, JJ., concur.