THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LLOYD FORREST, Defendant-Appellee.

First District (1st Division)   No. 86—0668

Opinion filed July 5, 1988.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

Barry D. Sheppard, of Chicago (Sue Augustus, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Lloyd Forrest, was charged with possession of more than 500 grams of cannabis with intent to deliver. (Ill. Rev. Stat. 1983, ch. 56½, par. 705(e).) Prior to trial, the court granted the defendant's motion to suppress the evidence obtained from the search of his garment bag. The State appeals.

At approximately 11:40 p.m. on January 31, 1985, defendant arrived at Midway Airport, located in Chicago, on a flight from Orlando, Florida. Officers Crowley and Boyle of the Chicago police department were at Midway Airport observing the passengers disembark from this flight because it originated in Orlando, a city known to be a source for illegal drugs. They were looking for anyone who fit the drug courier profile, which listed various characteristics associated with couriers. These characteristics included such things as arrival from a source city, activities by the suspected courier which were calculated to determine the existence of any law enforcement surveillance, or any activities which otherwise distinguished the suspected courier from fellow passengers in a manner arousing suspicion that contraband was being carried on his person or in his baggage. The defendant here passed through the concourse to the terminal carrying a garment bag over his shoulder. Once in the terminal, he did not pick up baggage in the claim area, but stopped at a public phone, although he did not speak into the phone. At that point, he was approached by Officer Crowley, who had a brief conversation with him, and in response to Crowley's inquiry, the defendant produced a valid driver's license bearing his name, address and likeness. When Crowley asked if he could inspect his bag, Forrest denied him permission to search the bag, and when Crowley told him the bag would then be detained, the defendant gave Crowley a phone number and left the airport without the bag.

According to the defendant's version of this occurrence, when he got off the plane, he went to a phone, and dialed the number of the party who was to pick him up, but no one answered. When Crowley

approached him and identified himself as a police officer, Crowley made no mention of a drug investigation. When the defendant denied Crowley permission to search his bag, Crowley physically took the bag from his person, and the defendant claimed that no mention was made of a canine sniff test. Defendant admitted that Crowley told him that he was free to go and that he would be contacted regarding the bag. At that point, defendant said he left the airport.

According to Crowley, neither he nor his partner had previous knowledge that anyone on board would be carrying contraband, but defendant caught their attention because he behaved strangely by repeatedly looking over his shoulder, while most passengers were looking ahead for an expected party who was to meet them or remained at the gate or another apparent agreed-upon location. Defendant initially passed quickly through the arrival gate area and started moving down through the concourse while repeatedly glancing backward. He did, however, stop at another gate for five to seven minutes while his fellow passengers, approximately 100 in number, had passed by him into the terminal. He was the last one to enter the terminal and went immediately to a public telephone where he did not dial any number but pivoted around continuously while surveying the terminal. He then left the terminal. Outside on the sidewalk, Crowley, dressed in casual clothes, approached the defendant, identified himself as a police officer, and asked defendant if they could talk. Defendant agreed, but told Crowley that he was in a hurry. Defendant produced a driver's license on request but said he left his ticket on the plane. Crowley indicated that he was conducting a drug investigation and asked to search defendant's bag, but indicated that defendant was not under arrest and was free to go. Defendant refused to allow a search of the bag and said that he was irritated at frequently being asked to allow a search of his bags for drugs. During the 5- to 10-minute discussion, Crowley testified that defendant became very nervous and argumentative. Although he earlier informed the defendant that he did not have to consent to the search, Crowley said he subsequently announced to the defendant that his behavior justified detention of his bag for a canine sniff test. Crowley stated that he then told defendant that if the test was positive, he would seek a search warrant and, if negative, defendant's unopened bag would be returned. Although Crowley invited defendant to stay while the sniff test was being conducted, defendant told Crowley that he did not care what Crowley did because he was leaving. Before the defendant departed in a taxicab, defendant left the bag on the sidewalk, and left Crowley a telephone number, which turned out to be a wrong number.

Within 25 minutes of the defendant's departure, the sniff test was conducted and the result was positive. In less than an hour after the defendant's departure, Crowley applied for a search warrant. The next day a search warrant was issued, and the subsequent search of defendant's garment bag revealed 3,150 grams of marijuana.

At defendant's trial, defendant moved to suppress the evidence of the contents of the garment bag based on the fact that the search was illegal. The trial court granted defendant's motion to suppress, allegedly relying on *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319, *Reid v. Georgia* (1980), 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752, *People v. Blevins* (1983), 118 Ill. App. 3d 221, 454 N.E.2d 802, *People v. Steckhan* (1983), 116 Ill. App. 3d 173, 452 N.E.2d 122, *People v. Kiser* (1983), 113 Ill. App. 3d 501, 447 N.E.2d 858, and *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, all of which assess the propriety of the seizure of the person of an airline passenger suspected of being a drug courier. The trial court relied on these cases and found that the State failed to meet its burden of demonstrating that reasonable, articulable suspicion existed to justify an investigatory stop under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The trial court, however, did not indicate whether it considered the illegal stop to have taken place when Crowley approached the defendant or when the defendant's personal property was detained, *i.e.*, at what point in time did the court apply the articulable facts test. From the court's brief comments, it appears that the court addressed itself exclusively to the issue of the seizure of the defendant's person, which the court found required articulable suspicion for Crowley's initial approach to the defendant, and did not recognize the detention of the garment bag as a separate and distinct issue. The trial court granted defendant's motion to suppress and the State now appeals.

The State raises the issue of whether the trial court erred when it granted the defendant's motion to suppress by relying solely on the rationale that articulable suspicion was required for the initial stop of defendant. The State here contends that the trial court's order sustaining defendant's motion to suppress the evidence recovered from his garment bag was manifestly erroneous, inasmuch as Officer Crowley's initial contact with him constituted a consensual encounter rather than a seizure within the meaning of the fourth amendment. Further, the State argues that the subsequent detention of defendant's garment bag for testing by a trained canine must be considered separate and that this seizure was supported by reasonable, articulable suspicion, grounded on objective facts which indicated that the

bag contained contraband. We agree with the State's analysis.

■ Prior to the opinion of Justice Stewart in *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (opinion of Stewart, J., joined by Rehnquist, J.), the mere approach of law enforcement officers to an airline passenger based on his similarity to the so-called drug courier profile was considered a seizure of the person. Accordingly, even if the seizure was temporary and limited, it had to be supported, under the *Terry v. Ohio* standard, by reasonable, articulable suspicion, based upon objective facts, or on probable cause if the *Terry* limitations had been exceeded and a traditional arrest occurred. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The *Mendenhall* decision, however, notes that every encounter between police and citizens in a public area does not involve a seizure of the person and that no seizure occurs unless, based on the circumstances, a reasonable person would believe that his liberty had been restrained. Thereafter, in *Reid v. Georgia*, Justice Rehnquist's dissenting opinion (*Reid v. Georgia*, 448 U.S. at 442, 65 L. Ed. 2d at 895, 100 S. Ct. at 2754 (Rehnquist, J., dissenting)), and Justice Powell's concurring opinion, joined by Chief Justice Burger and Justice Blackmun (448 U.S. at 442-43, 65 L. Ed. 2d at 895-96, 100 S. Ct. at 2755 (Powell, J., concurring, joined by Burger, C.J., and Blackmun, J.)),[1] commented on and approved of the Court's prior decision of *United States v. Mendenhall*, and the clear inference of their opinions in *Reid* as that the principles of *Mendenhall* would be followed by a majority of justices in a proper case.

■ Thereafter, in 1983, in *Florida v. Royer*, a majority of justices did approve the objective test announced in *Mendenhall* and held that law enforcement officers who approach an airline passenger in a public area, announce their office, and ask him if he is willing to answer questions put to him have not committed a seizure of the person within the meaning of the fourth amendment, and, thus, any answers given to the police during such a consensual encounter will not be suppressed. (See *Florida v. Royer* (1983), 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 235-36, 103 S. Ct. 1319, 1324.) Accordingly, the threshold question has been whether, under the objective *Mendenhall* test, a seizure of the person has occurred, and when a seizure has been found

---

[1]The majority opinion in *Reid v. Georgia* proscribed the mechanical application of the most generalized drug courier profile characteristics since such a procedure could ensnare every traveler and, hence, permitted only careful analysis of the particular facts and circumstances of each case regardless of whether any such circumstances appear in the profile to support a finding of reasonable, articulable suspicion. (448 U.S. at 441, 65 L. Ed. 2d at 894, 100 S. Ct. at 2754.)

to exist, the next point of inquiry is to determine whether a reasonable, articulable suspicion was present to support such a temporary and limited investigative *Terry* stop or whether probable cause existed to support a full-blown arrest. See *Florida v. Rodriguez* (1984), 469 U.S. 1, 83 L. Ed. 2d 165, 105 S. Ct. 308; *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319; *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870; *United States v. Borys* (7th Cir. 1985), 766 F. 2d 304.

■ This analysis has also been accepted in Illinois, and our courts have held, in accordance with *Mendenhall*, that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained, *i.e.*, the encounter between the officer and the individual exceeds the permissible level of a consensual inquiry in a public place. (See *People v. Long* (1983), 99 Ill. 2d 219, 229, 457 N.E.2d 1252, 1256; *People v. Lebron* (1987), 161 Ill. App. 3d 815, 819, 515 N.E.2d 312, 315.) Both the trial court and the defendant here rely on the case of *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, as support for the proposition that the evidence was properly suppressed here. In *DeLisle*, our court declined to follow the *Mendenhall* decision because only one other United States Supreme Court justice concurred with Justice Stewart's opinion on the seizure issue. The *DeLisle* case was implicitly overruled when our court recently noted that the *DeLisle* decision was decided before *Florida v. Royer*, in which a majority of the Supreme Court followed Justice Stewart's analysis in *Mendenhall*. (See *People v. Brett* (1984), 122 Ill. App. 3d 191, 195-96, 460 N.E.2d 876, 879.) The remaining Illinois cases relied on by the trial court and the defendant are likewise inapplicable since those cases also followed the outdated analysis as set forth in *DeLisle*.

■ Accordingly, the trial court here erroneously failed to apply the *Mendenhall* test to Crowley's initial approach in a public area where the defendant consented to the conversation. Defendant here was told that he was free to go, he understood that he was free to leave, and he, in fact, did leave. Crowley said he told defendant that he was investigating the transportation of illegal drugs, but, according to defendant's own testimony, Crowley's statement did not in any way convey the impression to the defendant that he was being restrained. Under current law, there was no seizure of the person of the defendant here, and the trial court's holding to the contrary is manifestly erroneous.

■ With regard to the detention of defendant's garment bag, which the trial court failed to consider as a separate issue, it has been

specifically held that the exposure of airline passenger luggage to a canine sniff test is not a "search" within the meaning of the fourth amendment because of the limited intrusiveness in this type of test, as balanced against the type of information revealed. (*United States v. Place* (1983), 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637.) Moreover, where an officer has a reasonable, articulable suspicion, grounded on objective facts, which indicate that a passenger's luggage contains contraband, he may briefly detain the luggage to conduct such a test and, based on the results of the test, either return the luggage expeditiously or use the results as a basis to apply for a search warrant. (*Place*, 462 U.S. at 702-03, 77 L. Ed. 2d at 117-18, 103 S. Ct. at 2642.) While the Supreme Court has declined to set rigid rules concerning the acceptable duration for this type of detention, it has held that a detention of 90 minutes prior to conducting the test was unreasonable where law enforcement officers had advance notice of the need for readily available trained canines but, nonetheless, failed to make them readily accessible, and the officers further exacerbated the situation by failing to inform the passenger of the testing process and the procedure to retrieve the luggage if the test results were negative. (*Place*, 462 U.S. at 709-10, 77 L. Ed. 2d at 122-23, 103 S. Ct. at 2645-46.) However, in *United States v. Borys*, the Seventh Circuit found that where trained dogs were readily available, the luggage was tested within 75 minutes of its seizure, and the defendant was informed of the procedure for the return of the luggage, the detention of the luggage was properly within the scope and duration limitations of *Terry v. Ohio*. (*United States v. Borys* (7th Cir. 1985), 766 F. 2d 304, 313.) Similarly, in *United States v. West* (1st Cir. 1984), 731 F.2d 90, the defendant there engaged in a conversation with drug enforcement agents and his conduct brought the contents of his suitcase under suspicion. The agents told him he was free to go but that his bag would be detained for a canine sniff test which would be done within 20 minutes if he cared to wait. The defendant in *West* chose to leave to catch a flight, and the test was not conducted until 45 to 60 minutes later. The First Circuit found that this interval was, nevertheless, proper under the *Terry v. Ohio* and *United States v. Place* standards, since the matter could have been concluded in 20 minutes if the defendant had chosen to wait, and, once he left, there was no urgent reason for the agents to act immediately. Additionally, in *United States v. Erwin* (9th Cir. 1986), 803 F.2d 1505, the Ninth Circuit approved an airport seizure of defendant's day pack where the contents of the pack came under suspicion during a consensual encounter. In *Erwin*, the defendant was informed that the pack was to be detained

for a canine sniff test, assured that the test would be brief, given arrangements for its return, and the interval between the bag's seizure and the test was admittedly "very short." *Erwin*, 803 F. 2d at 1509-10.

■■ ■ Here, the defendant flew into Chicago from a "source" city and, on arrival at Midway airport, lagged behind other passengers, continually looked over his shoulder as he travelled through the concourse and terminal, consented to speak to Crowley, was nervous and argumentative, and remarked that he was frequently confronted concerning drugs, a statement similar to that made by the defendant in *United States v. Place.* We find these facts to be sufficiently similar to those in *Place* to justify the limited detention of defendant's garment bag. Additionally, because the canine sniff test was performed by specially trained dogs that were readily available, within 25 minutes of the bag's seizure, we believe that the brevity requirement of *Terry v. Ohio* and *United States v. Place* was satisfied. While it is true that arrangements for the return of the bag were not worked out in detail, the defendant's abrupt departure after being informed of the bag's detention justified the failure to specify more detailed arrangements for the return of the bag. Crowley did, nonetheless, obtain a telephone number from defendant, and he knew the defendant's local address. Under these circumstances we find that the detention of defendant's bag was proper.

■■ Because the trial court relied upon law which has been superseded, it failed to properly apply the law as currently set forth by the United States Supreme Court and Illinois courts. Furthermore, because the trial court failed to distinguish the seizure of defendant's person from the seizure of defendant's bag, in addition to its improper application of law, we find that the decision of the trial court was manifestly erroneous. For all of these reasons, the decision of the circuit court of Cook County which granted defendant's motion to suppress must be reversed and the case remanded for further proceedings consistent with the views set forth herein.

Reversed and remanded.

BUCKLEY and MANNING, JJ., concur.