THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL NELSON, Defendant-Appellee.

First District (4th Division)   No. 1—87—3437

Opinion filed September 14, 1989.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and David L. Studenroth, Assistant State's Attorneys, of counsel), for the People.

Tuite, Mejia & Giacchetti, of Chicago (Patrick A. Tuite and Cynthia Giacchetti, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Michael Nelson, was charged with possession of a controlled substance with intent to deliver. The trial court granted the defendant's motion to suppress evidence seized from his luggage after exposure to a narcotics detector dog, and the State has appealed. The sole issue on appeal is whether the police had a reasonable, articulable suspicion that the luggage contained contraband.

The facts are undisputed. The defendant was traveling on Amtrak

from Delray Beach, Florida, to Portland, Oregon. He was required to change trains in Washington, D.C., and again in Chicago. At the hearing on the motion to suppress, the defendant presented the testimony of Chicago police officer Robert Glynn. Glynn stated that at 9:20 a.m. on February 24, 1987, he and his partner Christine Kolman observed the defendant exit an Amtrak train at Union Station. Glynn had been informed by Amtrak security that the defendant had paid cash for a one-way ticket from Delray Beach, Florida, that he occupied a roomette on the train, and that he had cancelled his reservations on "a couple of occasions." Glynn stated that the defendant was looking around as though "scanning the crowd for surveillance" and appeared to be leaving the station without putting his bags in storage. He further testified that Florida is a "source state" for drugs.

At that time, Glynn and Kolman approached the defendant, identified themselves and asked for identification and the defendant's train ticket. The defendant produced his Oregon driver's license and the train ticket, which was purchased in his own name. Glynn informed the defendant that he was not under arrest and asked if he would answer some questions. The defendant indicated that he would. When asked where he boarded the train, the defendant answered Washington, D.C. Glynn then asked why the train ticket indicated that he had boarded the train in Delray Beach, Florida. The defendant became nervous, began stuttering and changed his weight from one foot to the other. In response to further questions, the defendant stated that he was once arrested for possession of marijuana and that he was not carrying illegal narcotics. He refused to give the officers permission to search his luggage, and Glynn decided to detain the bags for exposure to a narcotics detector dog. Glynn told the defendant that he was free to leave and gave him a receipt and a phone number he could call for the return of his luggage.

The defendant left and the bags were inspected by a narcotics detector dog immediately outside of Union Station. The dog indicated the presence of narcotics in one of the bags. A search warrant was prepared and the bag was found to contain two kilos of cocaine.

The State presented the testimony of Dennis Kroll, an Amtrak security officer who reviews passenger reservations by computer. Kroll stated that the defendant paid $585 in cash for a one-way ticket originating in Delray Beach, Florida. He ordered a sleeping compartment called a roomette, changed his reservation five or six times and did not leave a call-back number. Kroll relayed this information to an agent of the Drug Enforcement Administration. Officer Christine Kolman also testified, essentially corroborating the testimony of Offi-

cer Glynn.

■■ ■ The trial court granted the defendant's motion to suppress based on its finding that the officers lacked articulable facts to justify the inspection of the defendant's luggage by a narcotics detector dog.

In *United States v. Place* (1983), 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637, the Court stated that the detention of luggage for purposes of investigation must be justified by a reasonable suspicion based on specific, articulable facts that the luggage contains narcotics. The facts used to support an investigatory detention are insufficient when they describe "a very large category of presumably innocent travelers, who would be subject to virtually random seizures." (*Reid v. Georgia* (1980), 448 U.S. 438, 441, 65 L. Ed. 2d 890, 894, 100 S. Ct. 2752, 2754.) In determining whether a reasonable, articulable suspicion exists, the court must consider the totality of the circumstances. (*United States v. Sokolow* (1989), 490 U.S. ____, 104 L. Ed. 2d 1, 109 S. Ct. 1581.) A trial court's ruling on a motion to suppress evidence will not be reversed unless manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.

In the case at bar, the State contends that the following factors established a reasonable, articulable suspicion that the defendant's luggage contained narcotics. The defendant purchased a one-way cash ticket from Florida, a "source state"; he occupied a roomette; he changed his reservations several times and did not leave a call-back number; he "scanned" the area when he exited the train and appeared nervous when questioned by the police; and he was not truthful when he said that he boarded the train in Washington, D.C.

■ After a consideration of these factors, we cannot conclude that the trial court's order granting the motion to suppress was manifestly erroneous. Although the ticket was purchased with cash, which presumably would be done to ensure anonymity, the defendant purchased the ticket in his own name. The officers were aware of this when the defendant produced an Oregon driver's license bearing his name and photograph. The trial court specifically found that the defendant answered truthfully when he said he boarded the train in Washington, D.C., based on the fact that he changed trains there. Given the fact that the defendant was not from Chicago and had to change trains in Union Station, no significance can be imparted to the fact that he "looked around" after exiting the train. The witnesses did not explain the significance of the reservation changes or the fact that the defendant occupied a sleeping compartment during his journey from Florida to Oregon. In our view these factors, even when considered together are insufficient to establish a reasonable, articula-

ble suspicion that the defendant's luggage contained narcotics. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.