THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL FURLONG, Defendant-Appellant.

First District (4th Division)   No. 1—89—1133

Opinion filed July 18, 1991.

Law Offices of Burton A. Brown, P.C., of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Pistorius, and Kelly Bolan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial, the defendant Michael Furlong was convicted of possession of a controlled substance with intent to deliver and sentenced to a prison term of six years and six months. He contends on appeal that the trial court erred in denying his motion to suppress evidence seized from his luggage after exposure to a narcotics detector dog. The defendant also contends that he was denied a fair trial as a result of the State's failure to disclose the substance of a statement as required by the supreme court discovery rules. 107 Ill. 2d R. 412(a)(ii).

At a hearing on the motion to suppress, the defendant presented the testimony of Carl Ekman, a special agent with the Drug Enforcement Administration (DEA) who was assigned to O'Hare airport. Ekman testified that at 8:20 p.m. on May 16, 1986, he and his partner, Agent Robert Fulkerson, Jr., were observing passengers deplane from a flight originating in West Palm Beach, Florida. Ekman explained that West Palm Beach is considered a source city for narcotics. The defendant exited the jetway carrying a bag that appeared to be lightly packed. The agents followed the defendant and overheard him ask a ticket agent where the baggage area was located. The defendant, continuously glancing over his shoulder, proceeded to the lower-level baggage area, bypassed the baggage carrousels and quickly took an escalator back to the ticket area. After stopping in a gift shop, the defendant made a telephone call and again walked past the ticket counters. At that point, Ekman and Fulkerson approached the defendant and identified themselves as DEA agents. Although at least one of the agents was armed, no weapon was displayed. When they asked the defendant if they could speak with him, he responded, "Sure."

Ekman then asked the defendant to produce a copy of his airline ticket and identification. According to Ekman, the defendant's chest

and stomach were visibly shaking. The ticket was purchased earlier that day and paid for in cash. The defendant's return flight was scheduled for 12:02 a.m. on May 18, approximately 28 hours after his arrival in Chicago. The defendant stated that the reason for the short trip was to see a baseball game. When asked which team he came to see, the defendant hesitated and was unable to answer.

Ekman returned the defendant's ticket and Florida driver's license and told him that they were conducting a drug investigation. In response to Ekman's question, the defendant indicated that he worked on a produce farm and that he was not carrying drugs. Ekman then asked if the defendant would consent to a search of his bag, informing him that he had a right to refuse the search and that he was free to leave. When the defendant refused the search, Ekman told him that the bag would be detained for a search by a narcotics detector dog and that the defendant had the option of remaining with the bag during the search, which would take about 15 minutes, or leaving the airport and having the bag delivered to him later. The defendant stated that he wanted to leave the airport and did not know where he would be staying. The agents then took down the information listed on the defendant's driver's license.

At that point, a friend of the defendant approached the agents and gave them his address and telephone number. The defendant and his friend then left the airport. A short time later, a narcotics detector dog reacted positively to the defendant's bag and a search warrant was obtained. Two bags of cocaine were found inside the bag.

The defendant also called Agent Fulkerson, whose testimony was substantially similar to that of Agent Ekman. The State presented the testimony of Officer Thomas Kinsella, the handler of the narcotics detector dog. At the conclusion of the hearing, the trial court denied the defendant's motion to suppress, finding that the defendant had consented to the initial encounter with the DEA agents.

At trial, Agents Ekman and Fulkerson again testified to the events surrounding their confrontation with the defendant and the search of his bag. The defendant, testifying in his own behalf, stated that he did not know that the cocaine was in his bag. He testified that he was given a ride to the airport by an acquaintance named Gary Fortinier and that Fortinier must have put the cocaine in the bag when he loaded it into his car. On cross-examination, the prosecutor asked, "Did you tell Agent Ekman on the plane that Gary Fortinier sold you the cocaine, and you bought [sic] it up to Chicago to turn it around?" No objection was made to this question, and the defendant answered, "No, I didn't."

When the State indicated that it would call Agent Ekman in rebuttal, defense counsel objected to any testimony on his part concerning prior inconsistent statements made by the defendant because the State failed to disclose any such statements in its answer to discovery. The State responded that the defendant was notified of this information because Agent Ekman's report listed the source of the cocaine as "Gary Fortinier, age 29-32, West Palm Beach, Florida." The trial court ruled that the report was not sufficient compliance with the discovery rules, but that the defendant's objection was untimely because he failed to object to the State's question during cross-examination which laid the foundation for impeachment.

Agent Ekman then testified in rebuttal that the defendant was extradited from Florida to Chicago on January 30, 1987. During the flight, the defendant told Ekman that he bought four ounces of cocaine from Gary Fortinier and brought it to Chicago with the intention of selling it for double or triple the price he paid. In surrebuttal, the defendant denied making that statement to Ekman.

The defendant first contends that the court erred in denying his motion to suppress evidence. Specifically, he argues that the court erred in finding that the initial encounter between the defendant and the DEA agents was a consensual one. He further maintains that the agents lacked a reasonable, articulable suspicion that his bag contained drugs and that the dog alert search was therefore illegal.

Relying upon the Supreme Court decision in *Florida v. Royer* (1983), 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324, this court in *People v. Forrest* (1988), 172 Ill. App. 3d 385, 390, 526 N.E.2d 616, 619, stated that "law enforcement officers who approach an airline passenger in a public area, announce their office, and ask him if he is willing to answer questions put to him have not committed a seizure of the person within the meaning of the fourth amendment, and, thus, any answers given to the police during such a consensual encounter will not be suppressed." A seizure of the person for fourth amendment purposes occurs only where a reasonable person, in view of all the circumstances surrounding the incident, would have believed that he was not free to leave. (*People v. Forrest*, 172 Ill. App. 3d 385, 526 N.E.2d 616.) The issue of whether the defendant voluntarily consented to an encounter with the police is a question of fact for the trial judge, whose determination will survive review unless clearly unreasonable. *People v. Price* (1990), 195 Ill. App. 3d 701, 709, 552 N.E.2d 1200.

The defendant argues that the concept of a truly consensual encounter between a police officer and a citizen is a fallacy because

the vast majority of citizens feel compelled to answer an officer's questions even if approached in a nonthreatening manner. Thus, every encounter between an officer and a citizen must rise to the level of an investigatory stop, which must be justified by a reasonable and articulable suspicion that the citizen was engaging in criminal activity. This argument is contrary to the decisions in *Florida v. Royer* and *People v. Forrest* and must therefore be rejected. The defendant then argues that the totality of the circumstances surrounding his encounter with the agents shows that his consent was not voluntary. As stated earlier, the officers observed the defendant walk from place to place throughout the airport, continuously glancing over his shoulder. They approached him in a public area, identified themselves and asked if he would answer some questions. No weapons were displayed. The defendant responded, "Sure." Under those circumstances, we cannot say that the trial court's determination that the defendant voluntarily consented to the encounter was clearly unreasonable.

The defendant further argues that the agents did not have a reasonable, articulable suspicion that his bag contained narcotics and that the dog alert search was therefore illegal. The detention of luggage for the purpose of investigation must be justified by a reasonable suspicion based on specific articulable facts that the luggage contained contraband. (*United States v. Place* (1983), 462 U.S. 696, 706, 77 L. Ed. 2d 110, 120, 103 S. Ct. 2637, 2644.) In the case at bar, no such reasonable suspicion existed when the defendant was first encountered by the agents. However, as previously discussed, the defendant voluntarily consented to answer the agents' questions. As a result of that interview, the agents learned that the defendant had bought his plane tickets that same day, paid for them in cash, and had a return flight approximately 28 hours later. According to Agent Ekman, the defendant was very nervous; his chest and stomach were visibly shaking. The defendant stated that he worked on a produce farm and came to Chicago to see a baseball game. However, he was unable to tell the agents which team he came to see. We believe that these factors, together with the defendant's conduct in continuously looking over his shoulder while walking through the airport, provided the agents with sufficient reason to detain his bag for a dog alert search.

The defendant next contends that he was denied a fair trial as a result of the State's failure to disclose the substance of a statement as required by the supreme court discovery rules. (107 Ill. 2d R. 412(a)(ii).) The statement in question was the defendant's statement to Agent Ekman on the plane to Chicago that he had bought the

drugs from Gary Fortinier and intended to sell them in Chicago for a higher price.

Supreme Court Rule 412(a)(ii) provides that the State must disclose to the defendant "any written or recorded statements and the substance of any oral statements made by the accused \*\*\* and a list of witnesses to the making and acknowledgement of such statements." (107 Ill. 2d R. 412(a)(ii).) The purpose of the disclosure rule is to afford the defendant protection against unfairness and inadequate preparation as well as to eliminate the tactical advantage of unfair surprise. (*People v. Bailey* (1982), 103 Ill. App. 3d 503, 505, 431 N.E.2d 723.) In order to warrant reversal of a conviction, the nondisclosure must have prejudiced the defendant's presentation of his or her defense. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 172, 514 N.E.2d 970.) Among the factors relevant to a determination of whether the State's failure to disclose constituted reversible error are the closeness of the evidence against the defendant and the strength of the undisclosed evidence. (*People v. Cisewski*, 118 Ill. 2d 163, 514 N.E.2d 970.) While exclusion of evidence and mistrial are extreme sanctions, a court will not refuse to impose them when they are the only effective sanctions available. *People v. Weaver* (1982), 92 Ill. 2d 545, 561, 442 N.E.2d 255.

The State makes three arguments with respect to its failure to disclose the statement the defendant made to Agent Ekman. First, it maintains that no discovery violation occurred because Ekman's report listed Gary Fortinier's name as the source of supply of the cocaine found in the defendant's bag. Second, the State argues that the issue was waived by the defendant's failure to object to a question concerning cross-examination which laid the foundation for impeachment. Third, the State contends that the defendant was not prejudiced by the alleged discovery violation.

In our view, the State's argument that it did not violate the discovery rules is without merit. As quoted earlier, Rule 412(a)(ii) requires the State to disclose the substance of any oral statement made by the accused. The trial court found, and we agree, that merely listing the name Gary Fortinier as the source of supply did not constitute sufficient compliance with the rule. The defendant's defense at trial was that he did not know his bag contained cocaine and that it must have been put there by Gary Fortinier, who drove him to the airport. Thus, a report listing Gary Fortinier as the source of supply would neither be surprising nor damaging to the defense. What was damaging was the undisclosed information that the defendant admitted buying the cocaine from Fortinier with the intention of reselling it.

■■ ■ The State's second argument is that the defendant waived the issue regarding the discovery violation by failing to raise a timely objection at trial. Citing *People v. Galindo* (1981), 95 Ill. App. 3d 927, 420 N.E.2d 773, the State contends that the defendant was made aware of the statement in question when the prosecutor asked him on cross-examination whether he had told Ekman on the plane that he bought cocaine from Gary Fortinier with the intention of reselling it. Thus, the element of unfair surprise was eliminated and the defendant's failure to object to the question on cross-examination constituted a waiver of the issue. In *People v. Eliason* (1983), 117 Ill. App. 3d 683, 453 N.E.2d 908, however, this court refused to find a waiver under circumstances almost identical to those presented in the case at bar. The court in *Eliason* stated that at the time the defendant was being cross-examined, defense counsel "was unaware that such a conversation in fact existed, and therefore cannot be faulted for failing to object to seemingly nonexistent evidence." (*Eliason*, 117 Ill. App. 3d at 692, 453 N.E.2d at 913.) In view of the damaging nature of the undisclosed evidence and what we regard as the State's willful misconduct in failing to disclose it, we believe that fundamental fairness requires us to consider the issue of whether the defendant is entitled to a new trial.

The State argues that a new trial is not warranted because it was the damaging nature of the evidence itself, rather than the State's failure to disclose it, that prejudiced the defendant. We cannot agree with this assessment. The defendant testified that he had no knowledge of the cocaine discovered in his bag. The State then impeached his credibility by introducing testimony that the defendant not only knew the cocaine was there, but that he purchased it with the intent to resell it. The impact of this impeachment testimony was clearly devastating to the defendant's case. Had the defendant known that the State was aware of his statement to Ekman, he may have elected not to testify and to simply present his theory to the jury through argument. We believe that the defendant was entitled to formulate his defense strategy and tactics with the benefit of all the information which the State was required to disclose. In our view, this case presents a glaring example of "trial by ambush." We accordingly reverse the defendant's conviction and remand the matter for a new trial.

Reversed and remanded.

LINN and McMORROW, JJ., concur.