THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND STEELS, Defendant-Appellant.

First District (1st Division)   No. 1—93—4500

Opinion filed December 11, 1995.—Rehearing denied February 5, 1996.

Rita A. Fry, Public Defender, of Chicago (Frederick Weil, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Daniel Groth, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

The defendant's only hope in this case was to persuade the trial judge that the 28 pounds of cannabis found in his suitcase were seized in violation of the fourth amendment. Inexplicably, the defendant's lawyer did not move to suppress the evidence, despite a reasonable probability of success. Convicted by a jury of cannabis trafficking, he was sentenced to seven years' imprisonment.

We find the defendant was denied his sixth amendment right to effective assistance of counsel. For that reason, we reverse his conviction and remand the cause for a new trial.

EVIDENCE AT TRIAL

Chicago police detective Thomas Kinsella and DEA Special Agent John Zandy testified that on January 31, 1991, they were part of the DEA Task Force drug interdiction unit. It was their job on that day to monitor trains arriving at Union Station from recognized drug source cities.

About 3:30 that afternoon a train arrived at Union Station from Los Angeles, a source city. Kinsella and Zandy watched as the train pulled into the station. They saw a man, later identified as Raymond Steels, jump down from the train as soon as it came to a halt. They noted that Steels deboarded from the first sleeper car of the train. He was carrying three pieces of luggage, including a hard-sided, Samsonite suitcase. He looked up and down the platform and then walked rapidly toward the concourse. Once inside the concourse, he entered the boarding lounge, set his luggage down, and looked around. A short while later he picked up the suitcase in a manner that sug-

gested that it was quite heavy. He walked toward the cab stand, changed direction twice, then headed for the escalator.

Steels' behavior drew the attention of Kinsella and Zandy. As he walked to the escalator, they approached him, introduced themselves as police officers, and asked to speak with him. Kinsella asked to see Steels' identification and train ticket. Steels, his hands visibly shaking, produced the ticket and a Wisconsin identification card in his name. The ticket was for a one-way trip from Los Angeles to Chicago. The amount of the ticket was $300 and had been purchased in cash.

The officers found several factors significant. Past experience has shown, they said, that drug couriers use hard-sided luggage to mask the size and shape of the contents and to help contain odors. It is also common for couriers to have one-way tickets. Often, they said, couriers fly to a source city, then return on trains. Trains are used because there are no security checks as there are in airports. The officers also testified that drug couriers often use sleeper cars for privacy and because they do not have to check their luggage. The officers found it noteworthy, too, that the ticket was paid for in cash. Business travelers, they testified, generally use credit cards or checks for record-keeping purposes. For these reasons, their suspicions were further aroused.

The officers questioned Steels further. He told them that he had been in California on vacation, he owned an import/export business in Milwaukee, and that the luggage he was carrying was his own. Detective Kinsella then asked if Steels would consent to a search of his luggage. Steels declined. Detective Kinsella then advised Steels that the suitcase would be detained for a sniff examination by a narcotics detection dog. He told Steels that he was free to leave or that he could wait for approximately 10 minutes until the dog checked the bag. At that point, Steels allowed the officers to search his garment bag and carry-on bag, but not the hard-sided suitcase. Kinsella searched those two bags and found nothing. He then prepared duplicate receipts for the hard-sided suitcase he was detaining. He gave one receipt to Steels, along with his business card. He had Steels sign the other one. Kinsella kept the signed receipt. (It was entered as an exhibit at trial.) Kinsella took Steels' picture. Steels then left the station.

After Steels left, the suitcase was taken to an office at the station. Kinsella's narcotics dog, Rex, was brought in and told to "fetch drugs." Rex located the suitcase and reacted in a way that indicated that narcotics were present inside the suitcase.

Based upon Rex's reaction to the suitcase, a search warrant was obtained. The suitcase was opened. Inside it were two new pairs of

ladies' jeans and three packages, two large and one small. The packages were wrapped in fabric softener sheets and clear cellophane. These packages were taken to the Chicago crime lab for analysis and were found to contain approximately 28 pounds of cannabis.

An arrest warrant was obtained a year later, in January 1992. Steels was arrested in Milwaukee. He waived extradition and was brought back to Chicago for trial.

On cross-examination, defense counsel asked both officers whether they saw a black man run up the escalator, chased by other officers, while they were speaking to Steels at the station. Defense counsel also suggested that the suitcase came tumbling down the escalator and that Steels was merely suspected of being in partnership with the man who escaped. Both officers denied seeing a man run up the escalator. Detective Kinsella stated that the scenario defense counsel suggested was "absolutely false." Zandy, too, denied that the incident occurred. The defense lawyer never offered evidence to support any of the factual assertions contained in her questions.

Cynthia Woods, a criminalist I from the Chicago crime lab, testified that she analyzed the packages found inside the Samsonite suitcase. The packages contained 25 individual bags, each weighing approximately 445 grams, for a total weight of 11,183.4 grams. Samples from the bags were tested and it was determined that the bags contained a substance that tested positively for cannabis.

The last State witness was Stephen Felder, an Amtrak ticket supervisor. He testified that, according to Amtrak records, Steels purchased a round-trip, coach ticket to Los Angeles from Chicago. Steels' reservation provided for a departure from Chicago on January 24, 1991, arrival in Los Angeles on January 26, 1991, and departure from Los Angeles on January 28, 1991. On January 25, 1991, the ticket accommodations for the return trip were upgraded to an economy bedroom. On January 28, 1991, the Los Angeles departure date was changed to January 29, 1991. The change in the reservation accounted for Steels' ticket showing a one-way trip.

The defense presented no evidence. After closing arguments the jury was instructed. It returned a verdict of guilty on the charge of cannabis trafficking.

DECISION

The plethora of decisions dealing with claims of ineffective assistance of counsel establishes the framework for our analysis in this case. There are two parts to the test announced in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052,

and embraced by the courts of this State. See *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246.

■ First, the defendant must prove that his lawyer made errors so serious that the lawyer was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. That is, the lawyer's deficient performance fell below an objective standard of reasonableness. See *People v. Bryant* (1989), 128 Ill. 2d 448, 458, 539 N.E.2d 1221.

Second, the defendant must demonstrate that he was prejudiced by the trial lawyer's deficient performance. To satisfy the prejudice prong of the *Strickland* test, the defendant must prove there is a "reasonable probability" that the outcome of the trial would have been different had his lawyer not been ineffective. *Strickland,* 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067. Also see *People v. Chandler* (1989), 129 Ill. 2d 233, 246, 543 N.E.2d 1290.

■ A defendant claiming ineffective assistance of counsel faces a formidable hurdle. He must overcome a "strong presumption that counsel's complained-of action or inaction was merely trial strategy." (*People v. Medrano* (1995), 271 Ill. App. 3d 97, 100, 648 N.E.2d 218.) Whether to file a motion is a matter of trial strategy which will be accorded great deference. *People v. Wilson* (1995), 164 Ill. 2d 436, 454-56, 647 N.E.2d 910; *People v. Johnson* (1986), 143 Ill. App. 3d 34, 492 N.E.2d 574.

That does not mean a defendant is barred from claiming ineffective assistance when his lawyer fails to file a motion to suppress evidence. In *People v. Robinson* (1995), 167 Ill. 2d 397, our supreme court addressed such a claim:

"Because we agree with the appellate court that there is no reasonable likelihood that a motion to quash defendant's arrest would have been granted based on a lack of probable cause, defendant has failed the prejudice prong of the *Strickland* test." *Robinson,* 167 Ill. 2d at 405.

In this case, we begin our inquiry into the first of the *Strickland* prongs by indulging in the strong presumption that counsel's failure to file a motion to suppress evidence was a matter of trial strategy. *Strickland* directs us to refrain from using hindsight or second guesses when we determine whether the presumption of trial strategy stands unscathed.

A reading of the record persuades us that the presumption in this case is overcome. In fact, it is obliterated.

The crucial evidence, the cannabis, was contained in the hard-sided suitcase. Two police officers saw the defendant carrying the suitcase. They took it from him. They photographed the defendant

before he was allowed to leave. The defendant signed a receipt for the suitcase. That, to say the least, is persuasive evidence that the suitcase belonged to the defendant.

■ We have examined the trial record to determine whether there was some sound reason to refrain from making the motion to suppress evidence. We can find none.

The evidence of defendant's possession of the cannabis was overwhelming and uncontradicted. When cross-examining the two police officers, defense counsel suggested in her questions that the suitcase tumbled down an escalator as an unidentified man escaped from the train station as he was being chased by other officers. The officers denied those factual assertions. The defendant did not testify. No witness testified in support of the facts contained in the questions. Not only were the questions pointless, they were improper. 134 Ill. 2d R. 3.3(a)(10), art. 8.

Like the court in *People v. Brinson* (1980), 80 Ill. App. 3d 388, 394, 399 N.E.2d 1010, we cannot conceive of any sound defense strategy which would have induced defense counsel to forego the motion to suppress evidence.

There was no defense strategy. The admission of ownership required for the motion to suppress would not have been admissible at trial. (*Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) True, had the defendant testified at trial, his pretrial admission could have been used on cross-examination. (*People v. Sturgis* (1974), 58 Ill. 2d 211, 317 N.E.2d 545.) But he did not testify at trial. The jury was left with no choice but to convict the defendant. That is ineffective assistance of counsel. *People v. Chandler* (1989), 129 Ill. 2d 233, 248, 543 N.E.2d 1290.

Our analysis to this point has dealt with the first prong of the *Strickland* test. The second prong requires us to determine whether the defendant has proved that his counsel's ineffective assistance caused prejudice. The question, then, is whether a motion to suppress evidence would have had a reasonable probability (or likelihood) of success.

It is not our desire or purpose to decide a motion to suppress that never was presented, argued, or ruled on in the trial court. Confining our review of the cases to the narrow issue before us, we find a motion to suppress the cannabis would have had a reasonable probability of success.

The brief detention of luggage for investigation must be supported by a reasonable suspicion, based on articulable facts, that the luggage contained contraband. *United States v. Place* (1983), 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637.

Generally, our courts do not uphold seizures of luggage where they are based on the observed mannerisms of the defendant, accompanied by truthful answers or other behavior that could be easily characterized as the actions of an innocent traveler in an unfamiliar environment. *People v. Bailey* (1995), 273 Ill. App. 3d 431, 652 N.E.2d 1084; *People v. Breeding* (1991), 219 Ill. App. 3d 590, 579 N.E.2d 1128; *People v. Boyd* (1991), 215 Ill. App. 3d 894, 576 N.E.2d 116; *People v. Sherman* (1989), 190 Ill. App. 3d 814, 547 N.E.2d 476; *People v. Nelson* (1989), 188 Ill. App. 3d 619, 544 N.E.2d 1111; *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954. But see *People v. Menendez* (1990), 199 Ill. App. 3d 612, 557 N.E.2d 462.

A legitimate basis for detaining luggage has been found where the defendant gives incorrect, conflicting, unsatisfactory, or untruthful answers to questions posed by police officers. *People v. Stoddard* (1993), 256 Ill. App. 3d 989, 628 N.E.2d 234; *People v. Furlong* (1991), 217 Ill. App. 3d 1047, 578 N.E.2d 77; *People v. Stratham* (1991), 209 Ill. App. 3d 352, 568 N.E.2d 183.

In this case, Steels' conduct at the train station caught the attention of the officers. Whether the totality of the circumstances justified detention of the suitcase is a question that will have to be decided on another day. We merely hold there was a reasonable probability that a motion to suppress the cannabis would have succeeded. Obviously, success would have reversed the outcome of the case. This is enough to satisfy the prejudice prong of the *Strickland* test.

CONCLUSION

We find "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.) For that reason, we reverse the defendant's conviction and remand the cause for a new trial. Because of our ruling, we do not need to address the jury selection issue raised by the defendant.

Reversed and remanded.

CAMPBELL, P.J., and BRADEN, J., concur.