NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220836-U

NO. 4-22-0836

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| DANTE ANTWAN WEBB, | ) | No. 19CF214 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding defense counsel was not ineffective for failing to (1) raise certain arguments in the motion to suppress evidence and (2) file a motion to reconsider defendant's sentence.

¶ 2    Defendant, Dante Antwan Webb, appeals from his convictions for unlawful possession with intent to deliver a controlled substance, a Class 1 felony (720 ILCS 570/401(c)(2) (West 2018)) and unlawful possession of a controlled substance, a Class 4 felony (*id.* § 206(b)(4)). Specifically, defendant argues evidence obtained from the traffic stop leading to his arrest should have been suppressed because the stop was not supported by reasonable suspicion. Additionally, defendant claims he was deprived of a fair sentencing hearing because the trial court improperly considered in aggravation a factor that was inherent in the offense. Defendant asserts his trial counsel was ineffective for both failing to (1) raise a meritorious

argument in the motion to suppress evidence and (2) file a motion to reconsider defendant's sentence based on the court's consideration of an improper aggravating factor. The State responds that because defendant was lawfully stopped and the court did not consider an improper aggravating factor at sentencing, trial counsel was not ineffective for failing to raise these issues in a motion to reconsider the sentence. We affirm.

¶ 3                          I. BACKGROUND

¶ 4          On August 23, 2019, the State charged defendant with one count of unlawful possession with intent to deliver a controlled substance (*id.* § 401(c)(2)) (count I) and one count of unlawful possession of a controlled substance (*id.* § 206(b)(4)) (count II). Count I alleged defendant knowingly possessed with intent to deliver more than 5 grams but less than 15 grams of cocaine. Count II alleged defendant knowingly possessed a substance containing cocaine.

¶ 5                       A. Motion to Suppress

¶ 6          In August 2020, defendant filed a motion to suppress evidence. The motion alleged that on August 22, 2019, officers from the Livingston County Sheriff's Office conducted a warrantless search of a vehicle driven by defendant. The vehicle defendant was driving did not have a front license plate, and the rear license plate appeared to originate from California. As a result of that search, officers recovered a scale, a bag containing a chunky, white substance, and a small container with a waxy substance. Defendant asserted those items should be suppressed because Deputy Sam Fitzpatrick—the officer who stopped defendant—lacked a reasonable, articulable suspicion for the stop. Specifically, Deputy Fitzpatrick lacked reasonable suspicion because he "was under the mistaken belief that all vehicles licensed in California have to display two plates [citation]."

¶ 7        In November 2020, the trial court conducted a hearing on defendant's motion to suppress, during which the following evidence was presented.

¶ 8                              1. *Testimony of Deputy Fitzpatrick*

¶ 9        Deputy Fitzpatrick testified he is a deputy sheriff for Livingston County and was working on August 22, 2019. While parked near mile marker 201 on Interstate 55, Deputy Fitzpatrick observed a vehicle with no front license plate and a California rear license plate. Deputy Fitzpatrick found this unusual because he believed California was a "two plate license plate state." This belief was based on his research and training of license plate requirements for all 50 states. Deputy Fitzpatrick admitted he had not read the whole California statute pertaining to license plates. Based on Deputy Fitzpatrick's observation that the vehicle lacked a front license plate, he effectuated a traffic stop, and he agreed the only matter he was investigating "was the fact that the car only had one plate."

¶ 10       After stopping the vehicle, which was a Mazda, and performing a license plate search, Deputy Fitzpatrick discovered the license plate was registered to a Jeep. When Deputy Fitzpatrick approached the vehicle, he asked the driver, whom he identified as defendant, to produce a driver's license and insurance information. Defendant could not produce either item but instead provided a traffic ticket from a previous stop and a bill of sale for the vehicle. The trial court allowed the admission of defendant's exhibit No. 1, which Deputy Fitzpatrick identified as video footage taken from his dashboard camera during his traffic stop with defendant. The video footage was then published to the court while defense counsel continued Deputy Fitzpatrick's direct examination.

¶ 11       Deputy Fitzpatrick testified that during the stop, Deputy Cody Followell from the Livingston County Sheriff's Office arrived to assist him. Deputy Fitzpatrick agreed that he asked

Deputy Followell to search the vehicle because during the stop, he smelled the odor of both raw and burnt cannabis. During the stop, Deputy Fitzpatrick also learned that defendant's driver's license was currently suspended. While Deputy Fitzpatrick was completing paperwork, Deputy Followell searched the interior of the vehicle, from which he produced a digital scale. Deputy Fitzpatrick testified the scale had a white, powdery residue on its surface, upon which he performed a swab test. The swab test yielded a positive result for the presence of cocaine.

¶ 12          After conducting this initial search on the roadway, the officers decided to move the vehicle for safety reasons. Inspector Jared Draper arrived to assist in driving the car from the roadway to the sheriff's office.

¶ 13                          2. *Inspector Draper's Testimony*

¶ 14          Inspector Draper testified he is employed with the Livingston County Sheriff's Office and was working on August 22, 2019. On that date, he was called to assist with the traffic stop involving defendant. Inspector Draper was instructed to drive the seized vehicle to the sheriff's office. As he was arriving, to let more light in to see the odometer, Inspector Draper pulled the shade of the sunroof, where he discovered two plastic bags. Inspector Draper did not perform any tests on the plastic bags but informed Deputy Fitzpatrick that he had found them.

¶ 15                          3. *Arguments and Denial of the Motion to Suppress*

¶ 16          During arguments, defendant argued that all evidence obtained from the traffic stop should be suppressed because Deputy Fitzpatrick lacked reasonable suspicion to stop defendant based on having one rear California license plate. In support of his argument, defendant asked the trial court to take judicial notice of section 5200(b) of the California Vehicle Code, which states, "When only one license plate is issued for use upon a vehicle, it shall be attached to the rear thereof." Cal. Veh. Code § 5200(b) (West 2018). Based on this statute,

defendant argued, at least some vehicles in California are not required to display two license plates. Therefore, Deputy Fitzpatrick's belief that defendant had violated that statute was incorrect and did not constitute reasonable suspicion that defendant committed a traffic violation. Defendant also argued the stop was unduly prolonged when officers moved the vehicle to the sheriff's office after they had already conducted a roadside search.

¶ 17     The State argued Deputy Fitzpatrick had reasonable suspicion to stop defendant because "absent pulling the vehicle over and making contact with this person," he would have had "no way of knowing" whether the vehicle was required to have one or two license plates under the California Vehicle Code. Furthermore, the State maintained, even if Deputy Fitzpatrick was mistaken regarding California license plate requirements, his mistake was objectively reasonable and therefore did not negate the legality of the traffic stop such that suppression of evidence was warranted.

¶ 18     The trial court denied defendant's motion to suppress, finding as follows:

> "California can be a two plate state or a one plate state. So in this situation where, *** there was this ambiguity and there was only one plate on the vehicle, I do believe the Deputy had reasonable articulable suspicion to stop the vehicle and inquire further regarding the plate situation."

¶ 19     Defendant also filed a motion to suppress statements, arguing that he was interrogated by the police on the roadside without having received *Miranda* warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Following a January 2021 hearing, the trial court denied the motion, finding that defendant was not in custody such that *Miranda* warnings were required.

¶ 20                              B. Bench Trial

¶ 21    In March 2022, the trial court conducted a bench trial.

¶ 22                                1. *State's Case-in-Chief*

¶ 23    Inspector Draper testified consistently with his testimony at the hearing on defendant's motion to suppress evidence. Additionally, Inspector Draper testified that the two plastic bags he discovered in the sunroof of the vehicle defendant was driving contained a white, chunky substance and were consistent with the way cocaine is packaged for sale. He identified People's exhibit Nos. 2 and 3 as the plastic bags he recovered and exhibit Nos. 4 and 5 as the white, chunky substances that were in those plastic bags. Based on Inspector Draper's training and experience, the amount contained in the plastic bags indicated to him that the substances contained in the bags were for sale.

¶ 24    Deputy Fitzpatrick also testified consistently with his testimony at the motion to suppress hearing. Additionally, Deputy Fitzpatrick testified defendant informed him that he worked at an auto lot. Defendant told him he had taken the California license plate that was displayed on the Mazda he was driving from a different car on the auto lot because he needed a vehicle to drive to court. After officers searched the vehicle, defendant explained to Deputy Fitzpatrick that the digital scale they found belonged to his brother. When Inspector Draper found the plastic bags in the sunroof, which he collected as evidence, he informed Deputy Fitzpatrick.

¶ 25    Deputy Followell testified that he was the backup officer for the traffic stop. Deputy Followell searched the vehicle and located (1) a small container of cannabis wax in the center console and (2) a digital scale with white reside in the center console. At first, defendant claimed he used the scale to measure his cannabis; he later said that it was his brother's scale, and his brother uses cocaine.

¶ 26        Finally, Julia Edwards testified she is a forensic chemist and was assigned to this case. Edwards was asked to weigh and test People's exhibit Nos. 4 and 5 for the presence of cocaine and opioids. Exhibit No. 4 was 0.7 grams of a substance containing cocaine and exhibit No. 5 was 7.8 grams of a substance containing cocaine. Both substances indicated the presence of cocaine but not opioids.

¶ 27                                    2. *Defendant's Case*

¶ 28        Defendant testified on his own behalf. While driving on Interstate 55, defendant was stopped by police. He worked for Express Lines, which is a company that purchases cars from auctions and hauls them to customers. While at an Express Lines auto lot, defendant told his boss that he was having trouble with his car and needed transportation for court. Defendant's boss directed him to use any vehicle from the lot that had keys in it. Subsequently, defendant selected the Mazda and put a license plate on it, which happened to be a California plate. When defendant was pulled over, he claimed it was the first time he had ever been in that car. During his testimony, defendant identified defendant's exhibit No. 1 as a copy of the title for the vehicle that was in the glove box, which showed the car had been assigned to Omari, the owner of Express Lines.

¶ 29        Defendant agreed the car, which he drove to Bloomington, had a sunroof, but he denied touching it or the shade. According to defendant, he spent about 30 minutes in Bloomington before driving back toward the Chicago area when he was stopped by Deputy Fitzpatrick. Defendant had never seen the plastic bags admitted as People's exhibit Nos. 4 and 5, and he did not put them in the sunroof area. Furthermore, defendant testified he did not know the digital scale was in the car. Initially, he told the police the scale was his because he was just "trying to get home and about [his] way."

¶ 30 Defendant explained that this car was a repossession and contained trash and clothing that had not been cleaned out, which is common for auctioned vehicles. None of the officers from the stop asked him about the plastic bags in the sunroof, and he did not find out about them until after he was in jail. Defendant claimed the plastic bags containing the cocaine were not his.

¶ 31 Following arguments, the trial court issued a written order finding defendant guilty of both counts. The court specifically found the testimony of the police officers to be credible and defendant's testimony to be incredible.

¶ 32                                    C. Sentencing

¶ 33 Defendant's case proceeded to a sentencing hearing in September 2022. Following the parties' arguments, the trial court found count II merged with count I. In fashioning its sentence, the court explained it considered the evidence presented, the arguments of the parties, and the statutory factors in mitigation and aggravation. Specifically, the court found as follows:

> "Your prior record I don't consider to be a strong aggravating factor except
> insofar as you were on bond in the McLean County case at the time that this case
> was committed. ***
>
>      There also is deterrence, and that is one of the strongest factors in this
> case. There's a lot of argument about deterrence whether it does any good or
> doesn't do any good. I think it is important nevertheless that the community, all
> communities for that matter, send a message when you are dealing with controlled
> substances that there is a very real threat of harm to society when you are dealing
> with those controlled substances, especially now with the fentanyl popping up

everywhere and overdosing and all that stuff. So I do think that it is important that there be an understanding that if you are dealing or selling controlled substances you can expect that you are going to receive a pretty harsh penalty for that."

The court further found defendant's honorable discharge from the military, history of consistent employment, and respectful demeanor to be applicable mitigating factors.

¶ 34　　　　The trial court ultimately sentenced defendant to six years in prison on count I. After the court pronounced the sentence, defendant's counsel indicated that defendant wished to appeal his conviction but not his sentence, and therefore he would be filing a notice of appeal immediately rather than filing a motion to reconsider his sentence. The court then asked defendant, "So you do understand, sir, you are giving up your right to contest the sentence?" Defendant responded he understood.

¶ 35　　　　This appeal followed.

¶ 36　　　　　　　　　　　　　　II. ANALYSIS

¶ 37　　　　On appeal, defendant first argues all evidence obtained from the traffic stop should have been suppressed because Deputy Fitzpatrick lacked reasonable suspicion that defendant had committed a traffic violation. Further, defendant claims defense counsel was ineffective for failing to raise a meritorious argument in his motion to suppress. Second, defendant asserts he was denied a fair sentencing hearing because the trial court erroneously considered the threat of harm—a factor inherent in the offenses—as an aggravating factor. Moreover, defendant contends his trial counsel was ineffective for failing to object to this improper consideration at the sentencing hearing and file a motion to reconsider defendant's sentence based on the error.

¶ 38      The State responds the traffic stop was supported by reasonable suspicion, and therefore, suppression of the evidence obtained from the stop was not warranted. In addition, the State contends trial counsel was not ineffective for failing to file a motion to reconsider defendant's sentence because the trial court did not consider any improper aggravating factors when sentencing defendant.

¶ 39      For the following reasons, we conclude defense counsel was not ineffective for failing to (1) raise a meritorious argument in the motion to suppress evidence or (2) file a motion to reconsider defendant's sentence.

¶ 40                    A. Motion to Suppress Evidence

¶ 41      We first consider defendant's argument that Deputy Fitzpatrick lacked reasonable suspicion to stop the vehicle driven by defendant. Specifically, defendant contends the California Vehicle Code provides that its license plate display requirements *only* apply to vehicles being operated in California or while being held for sale in California. Because defendant was not operating the vehicle in California, his argument continues, Deputy Fitzpatrick lacked reasonable suspicion to stop defendant for violating California's license plate requirements, and his mistake of law was unreasonable where he lacked authority to enforce the California Vehicle Code. We note defendant does not argue the trial court erred when it denied his motion to suppress evidence. Instead, defendant claims that defense counsel was ineffective for failing to raise this specific argument in the motion to suppress evidence, and but for this failure, the motion to suppress would have been granted. We address each argument in turn.

¶ 42                    1. *Ineffective Assistance of Counsel*

¶ 43      Defendant acknowledges he forfeited his argument that Deputy Fitzpatrick lacked reasonable suspicion to stop him on the basis that California license plate requirements do not

apply to vehicles operated outside of California. However, defendant asserts this court may review the issue because defense counsel was ineffective for failing to raise this argument in the motion to suppress evidence.

¶ 44        Claims of ineffective assistance of counsel are analyzed under the familiar framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. To prevail on a claim of ineffective assistance of counsel, the defendant must show that defense counsel's performance was deficient, and but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Id.* To establish prejudice based on defense counsel's failure to raise an argument in a motion to suppress evidence, the defendant must show (1) the argument was meritorious, and (2) the outcome of the trial would have been different had the trial court suppressed the evidence. See *id.* ¶ 15.

¶ 45        Accordingly, we next consider whether defendant's argument that Deputy Fitzpatrick lacked reasonable suspicion is meritorious.

¶ 46                        2. *Reasonable Suspicion*

¶ 47        The United States Constitution and the Illinois Constitution protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. "[T]he touchstone of the fourth amendment is reasonableness, which is measured objectively by examining the totality of the circumstances surrounding a police officer's encounter with a citizen." *People v. Lake*, 2015 IL App (4th) 130072, ¶ 28, 28 N.E.3d 1036.

¶ 48        A police officer's act of "stopping a vehicle and detaining its occupants constitute[s] a 'seizure' within the meaning of the fourth amendment." *People v. Timmsen*, 2016

- 11 -

IL 118181, ¶ 9, 50 N.E.3d 1092. Such seizures, commonly referred to as *Terry* stops, are analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Timmsen*, 2016 IL 118181, ¶ 9. This court has discussed the constitutionality of *Terry* stops as follows:

> " 'In *Terry v. Ohio* [citation], the Supreme Court provided an exception to the warrant and probable cause requirements.' [Citation.] 'Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime.' [Citation.] A *Terry* stop 'must be justified at its inception, and the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' [Citation.] The officer's level of suspicion 'must be more than an inarticulate hunch.' [Citation.] 'The officer's conduct is judged by an objective standard, which analyzes whether the facts available to the officer at the moment of the stop justify the action taken.' " *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 28, 153 N.E.3d 1012.

¶ 49 In the context of traffic stops, "[r]easonable suspicion exists where an officer possesses specific, articulable facts that, when combined with rational inferences derived from those facts, give rise to a belief the driver is committing a traffic violation." *People v. Mott*, 389 Ill. App. 3d 539, 544, 906 N.E.2d 159, 164 (2009). The reasonable suspicion standard is less than that necessary for probable cause. *Navarette v. California*, 572 U.S. 393, 396 (2014). Additionally, police officers "may make a lawful *Terry* stop without first determining whether the circumstances [they] observed would satisfy each element of a particular offense." *People v. Little*, 2016 IL App (3d) 130683, ¶ 18, 50 N.E.3d 655. "If reasonable suspicion is lacking, the

traffic stop is unconstitutional, and evidence obtained as a result of the stop is generally inadmissible." *People v. Gaytan*, 2015 IL 116223, ¶ 20, 32 N.E.3d 641.

¶ 50    In *Heien v. North Carolina*, 574 U.S. 54, 60 (2014), the United States Supreme Court held that reasonable suspicion can rest on an officer's mistaken understanding of the scope of a legal prohibition. The Supreme Court explained, however, that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable." (Emphasis in original.) *Id.* at 66. In *Gaytan*, the Illinois Supreme Court, citing *Heien*, similarly concluded that an officer's objectively reasonable mistake of law does not render an otherwise permissible stop unconstitutional under article 1, section 6 of the Illinois Constitution. *Gaytan*, 2015 IL 116223, ¶ 53; see Ill. Const. 1970, art. 1, § 6.

¶ 51    3. *Illinois and California License Plate Requirements*

¶ 52    Section 3-701 of the Illinois Vehicle Code provides, "No person shall operate *** a vehicle upon any highway unless there shall be attached thereto and displayed thereon when and as required by law, proper evidence of registration." 625 ILCS 5/3-701(a) (West 2018). Vehicles registered in other states are required to display "[a] current and valid reciprocal foreign registration plate or digital registration plate or plates properly issued to such vehicle or a temporary registration issued therefor, by the reciprocal State." *Id.* § 3-701(a)(2). "Valid" generally means "legally sufficient; binding." Black's Law Dictionary (11th ed. 2019). Defendant in this case was driving a vehicle that appeared to be registered in California. Accordingly, Deputy Fitzpatrick was required to have reasonable suspicion that defendant failed to display a current and legally sufficient reciprocal plate or plates from California to justify the investigatory stop in this case.

¶ 53    Section 5200 of the California Vehicle Code provides:

"(a) When two license plates are issued by the [California Department of Motor Vehicles] for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and the other in the rear.

(b) When only one license plate is issued for use upon a vehicle, it shall be attached to the rear thereof." Cal. Veh. Code § 5200 (2019).

Section 4850 of the California Vehicle Code directs that the California DMV, "upon registering a vehicle, shall issue to the owner *two* partially or fully reflectorized license plates or devices for a motor vehicle, other than a motorcycle, and one partially or fully reflectorized license plate or device for all other vehicles required to be registered under this code." (Emphasis added.) *Id.* § 4850. Additionally, section 5202 of the California Vehicle Code provides that "[a] license plate issued by this state *** shall be attached upon receipt and remain attached during the period of its validity to the vehicle for which it is issued *while being operated within this state or during the time the vehicle is being held for sale in this state*." (Emphasis added.) *Id.* § 5202.

¶ 54                                  4. *This Case*

¶ 55          Here, counsel's failure to argue in the motion to suppress that Deputy Fitzpatrick lacked reasonable suspicion to stop defendant on the basis that California license plate requirements do not apply to vehicles operated outside of California did not prejudice defendant. Specifically, we conclude the argument would not have been meritorious had it been presented to the trial court.

¶ 56          Defendant correctly asserts that the California Vehicle Code provides that its license plate display requirements apply only to vehicles driven or offered for sale in California (*id.* § 5202) and that Illinois law enforcement officers lack authority to enforce the California Vehicle Code. However, Illinois law enforcement officers *are* charged with enforcing the *Illinois*

- 14 -

Vehicle Code, which requires foreign registered vehicles to display a current and valid reciprocal plate. 625 ILCS 5/3-701(a)(2) (West 2018). Defendant does not dispute that in California, he would have been required to display both front and rear license plates. Cal. Veh. Code §§ 4850, 5200 (2019).

¶ 57 In defendant's reply brief, he argues that Illinois does not require foreign registered vehicles to comply with the license plate display requirements of the issuing state. Assuming, *arguendo*, defendant is correct, we conclude Deputy Fitzpatrick's allegedly mistaken belief that foreign registered vehicles must comply with the display requirements of the issuing state to comply with Illinois law was objectively reasonable. As stated above, California law requires motor vehicles other than motorcycles to display two license plates (Cal. Veh. Code §§ 4850, 5200 (2019)) and Illinois law requires foreign registered vehicles to display a "current and valid foreign registration plate" (625 ILCS 5/3-701(a)(2) (West 2018)). It was reasonable for Deputy Fitzpatrick to believe that defendant's failure to affix two license plates to the vehicle consistent with California's requirements was not "valid," *i.e.*, legally sufficient, and therefore provided a reasonable suspicion that he did not display proper evidence of registration under the Illinois Vehicle Code. Accordingly, even assuming Deputy Fitzpatrick was mistaken, this objectively reasonable mistake of law did not render the stop unconstitutional. See *Gaytan*, 2015 IL 116223, ¶ 53. Therefore, this argument would not have been meritorious had it been presented in the motion to suppress evidence.

¶ 58 Because we conclude defendant's proposed argument would not have been meritorious, we need not address whether counsel's performance was deficient. *Henderson*, 2013 IL 114040, ¶ 11 ("A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel.").

¶ 59                              B. Defendant's Sentencing Challenge

¶ 60        Defendant acknowledges he waived any challenge to his sentence by affirmatively choosing not to file a motion to reconsider the sentence. However, defendant asserts this court may review the issue because trial counsel was ineffective for waiving defendant's right to challenge the sentence. Specifically, defendant argues trial counsel should have filed a motion to reconsider defendant's sentence on the basis the trial court improperly considered in aggravation the threat of harm to the community—a factor which is inherent in the offense of unlawful possession with intent to deliver a controlled substance.

¶ 61        As stated above, claims of ineffective assistance of counsel are analyzed under the familiar framework established in *Strickland*. *Id.* Here, to establish prejudice, defendant must show a reasonable probability the motion defense counsel failed to file would have been granted. *People v. Steels*, 277 Ill. App. 3d 123, 128, 660 N.E.2d 24, 28 (1995). Accordingly, we must first determine whether the outcome of the case would have been different had defense counsel filed a motion to reconsider defendant's sentence.

¶ 62                              1. *Sentencing Considerations*

¶ 63        In sentencing a criminal defendant, the trial court has broad discretionary powers. Ill. Const. 1970, art. I, § 11; *People v. McGath*, 2017 IL App (4th) 150608, ¶ 63, 83 N.E.3d 671. An appropriate sentence must be based upon the particular circumstances of an individual case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for deterrence and punishment. *McGath*, 2017 IL App (4th) 150608, ¶ 63. The court is also to consider appropriate aggravating and mitigating factors as set forth in the Unified Code of Corrections. See 730 ILCS 5/5-5-3.1(a) (West 2022) (mitigating factors); *id.* § 5-5-3.2(a) (aggravating factors). "There is a strong

presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014.

¶ 64 The Illinois Supreme Court has explained the concept of double enhancements as follows:

"Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense. [Citation] Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' [Citation.] Such dual use of a single factor is often referred to as a 'double enhancement.' [Citation.] The prohibition against double enhancements is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense. [Citation.] The double-enhancement rule is one of statutory construction [citation], and the standard of review therefore is *de novo* [citation]." *People v. Phelps*, 211 Ill. 2d 1, 11-12, 809 N.E.2d 1214, 1220-21 (2004).

¶ 65 The Unified Code of Corrections provides that the trial court may consider that "the defendant's conduct caused or threatened serious harm," as an aggravating factor in sentencing. 730 ILCS 5/5-5-3.2(a)(1) (West 2022). However, it is improper for the court to consider in aggravation the general societal harm caused by drug trafficking because "[i]t is well recognized that drugs and drug-related crimes cause great harm to our society," and therefore,

the threat of harm is inherent in such offenses. *People v. McCain*, 248 Ill. App. 3d 844, 851, 617 N.E.2d 1294, 1300 (1993).

¶ 66 The trial court may also consider in aggravation whether a harsher sentence "is necessary to deter others from committing the same crime." 730 ILCS 5/5-5-3.2(a)(7) (West 2022). The concept of deterrence generally takes two forms: specific or general. Hunter, *et al.*, Trial Handbook for Illinois Lawyers - Criminal Sentencing § 1:8 (9th ed. 2022). The objective of general deterrence in the sentencing context is that "the public at large will be less inclined to commit crimes." *Id.* Specifically, "[i]t is hoped that offenders will be deterred because they recognize that the benefits of crime are outweighed by the accompanying adverse consequences." *Id.*

¶ 67                                              2. *This Case*

¶ 68 Defendant argues the trial court improperly considered the threat of harm as an aggravating factor when it stated the following:

> "There also is deterrence, and that is one of the strongest factors in this
> case. There's a lot of argument about deterrence whether it does any good or
> doesn't do any good. I think it is important nevertheless that the community, all
> communities for that matter, send a message when you are dealing with controlled
> substances that there is a very real threat of harm to society when you are dealing
> with those controlled substances, especially now with the fentanyl popping up
> everywhere and overdosing and all that stuff. So I do think that it is important that
> there be an understanding that if you are dealing or selling controlled substances
> you can expect that you are going to receive a pretty harsh penalty for that."

¶ 69    In our *de novo* review, we conclude the trial court did not improperly consider the threat of harm as an aggravating factor at sentencing. When considered in context, the court's comment was related to the concept of general deterrence, which was an applicable aggravating factor in this case. See 730 ILCS 5/5-5-3.2(a)(7) (West 2022). The court specifically stated that in fashioning defendant's sentence, it wanted to "send a message" to the community that drug crimes will be harshly penalized. The court's objective was that "offenders will be deterred because they recognize that the benefits of crime are outweighed by the accompanying adverse consequences." Hunter, *et al.*, Trial Handbook for Illinois Lawyers - Criminal Sentencing § 1:8 (9th ed. 2022). Although the court discussed the harm that drugs present to society, it was not considered as an aggravating factor but instead as the underlying rationale for the concept of deterrence. Put differently, *because of* the harm illegal drugs present to the community, the court sought to discourage others from committing drug-related offenses by imposing a more severe sentence in this case. We agree that the court's comment regarding fentanyl overdoses was not relevant here. However, in considering the court's reasoning overall, it was merely an isolated statement made as part of the general discussion of deterrence. Therefore, the court did not improperly consider the threat of harm to society in sentencing defendant and no double enhancement occurred.

¶ 70    Because we conclude the trial court did not improperly consider the threat of harm to society in sentencing defendant, there is no reasonable probability that a motion to reconsider defendant's sentence would have been granted on that basis. Accordingly, defense counsel's decision not to file a motion to reconsider defendant's sentence did not prejudice defendant and did not constitute ineffective assistance of counsel.

¶ 71                                III. CONCLUSION

¶ 72        For the reasons stated, we affirm the trial court's judgment.

¶ 73        Affirmed.