NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240792-U

NO. 4-24-0792

IN THE APPELLATE COURT

FILED
June 20, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| DANTE ANTWAN WEBB, | ) | No. 19CF214 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's summary dismissal of defendant's
*pro se* postconviction petition, concluding defendant's argument that his appellate
counsel was ineffective for failing to contest on direct appeal the sufficiency of the
evidence supporting his convictions for unlawful possession with intent to deliver
a controlled substance and unlawful possession of a controlled substance was
meritless.

¶ 2    Defendant, Dante Antwan Webb, appeals from the trial court's judgment
summarily dismissing his postconviction petition following his convictions for unlawful
possession with intent to deliver a controlled substance (720 ILCS 570/401(c)(2) (West 2018)) and
unlawful possession of a controlled substance (*id.* § 402(c)). Defendant argues the court erred in
dismissing his petition because it set forth an arguable claim that appellate counsel was ineffective
for failing to argue on direct appeal the State presented insufficient evidence to convict him of the
charged offenses. We affirm.

¶ 3                              I. BACKGROUND

¶ 4           In August 2019, the State charged defendant with the aforementioned offenses. The charges arose out of a traffic stop on August 22, 2019, initiated when Deputy Sam Fitzpatrick observed the vehicle defendant was driving without a front license plate. During the stop, the police searched the vehicle and recovered two bags of cocaine.

¶ 5           On August 11, 2020, defendant filed a motion to suppress evidence seized during the traffic stop, arguing, *inter alia*, the police illegally obtained the evidence because Fitzpatrick lacked a reasonable, articulable suspicion to justify the stop. On December 23, 2020, following a hearing, the trial court denied defendant's motion to suppress.

¶ 6           On October 20, 2021, defendant filed a motion to suppress statements he made to the police after he was detained during the stop. Defendant argued the police failed to advise him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), before he made the statements. On January 7, 2022, following a hearing, the trial court denied this motion.

¶ 7           On August 18, 2021, defendant waived his right to a jury trial. The matter proceeded to a bench trial on January 25, 2022, and the following evidence was adduced. Deputy Jason E. Draper testified he had been employed with the Livingston County Sheriff's Office for approximately 19 years. Five such years involved work as a narcotics officer, in which Draper engaged in over 150 investigations concerning the purchase of narcotics, including crack cocaine. As part of these investigations, Draper would purchase cocaine. In his experience, sales could involve amounts of cocaine as low as ".4, .5 of a gram," which he agreed was "consistent with use of cocaine." He explained that, many times, when one attempts to buy one gram, "you would approximately get less than a gram" because "a lot of times [sellers] use the packaging material as the combined weight." Draper testified that on August 22, 2019, he assisted with a traffic stop

involving defendant. Specifically, once it was determined that the vehicle defendant was driving would be seized, Draper responded to the scene "to pick the vehicle up so [he] could do the asset forfeiture on it." While driving the vehicle to the sheriff's office, Draper opened the sunroof to see the odometer more clearly. When he did so, he noticed a "baggie in the left front corner driver's side of the sunroof." According to Draper, the baggie contained a white, chunky substance that appeared to be cocaine. In the "left rear of the sunroof," also on the driver's side, Draper located another baggie containing a "white purported chunky substance of cocaine." Draper acknowledged, based upon his experience as a narcotics officer, the amount of purported cocaine he recovered from the sunroof was indicative of a possible sale of cocaine. On cross-examination, Draper agreed the baggies were not tested for fingerprints and no identifying information, such as mail, was recovered from the area where the baggies were located.

¶ 8          Deputy Fitzpatrick of the Livingston County Sheriff's Office testified that on August 22, 2019, he was parked near mile marker 201 on Interstate 55 when he observed a vehicle driving with only a rear California license plate. Because the vehicle had no front license plate, Fitzpatrick pursued the vehicle and initiated a stop. As Fitzpatrick approached the vehicle, he smelled burned and raw marijuana. Fitzpatrick testified defendant, the driver and sole occupant of the vehicle, told him "he had smoked a blunt in the vehicle 15 minutes prior to me stopping him." Fitzpatrick explained when he checked the rear license plate, he learned the registration was associated with a different vehicle. Upon asking defendant about the mismatch, defendant stated he took the plate from another vehicle "that he had on one of his lots" and "put the plate on the vehicle so that he could get to court." During the stop, other officers arrived to assist, and Fitzpatrick learned defendant's license was suspended. Defendant was asked to get out of the vehicle, which officers then searched. Fitzpatrick explained, during the search, Deputy Cody

Followell located a digital scale with white residue on it. When asked about the scale, defendant responded "it was his brother's." A photograph of the scale was entered into evidence. According to Fitzpatrick, when defendant was asked if he used cocaine, he responded he "did a line of cocaine *** two weeks ago." Fitzpatrick explained, once the traffic stop was completed, officers determined the vehicle would be seized and further searched. Accordingly, Draper drove the vehicle to the sheriff's office while Fitzpatrick followed in his vehicle. When Fitzpatrick arrived, he was given a baggie containing a hard, chunky substance. He acknowledged no burned or raw cannabis was found in the vehicle, but a container of tetrahydrocannabinol (THC) wax residue was recovered.

¶ 9        Deputy Followell testified that on August 22, 2019, he was employed with the Livingston County Sheriff's Office and assisted Fitzpatrick with the traffic stop by searching defendant's vehicle. As part of his search, Followell located in the center console a small container of THC wax and a digital scale with "a white powder residue on it." Followell testified when he asked defendant about the scale, defendant "initially" responded he used it "to measure his cannabis." Later, however, defendant claimed the scale "wasn't his" but was, "in fact, his brother's scale and that his brother is a cocaine user."

¶ 10       Julia Edwards, a forensic scientist for the Illinois State Police, tested the contents of the two baggies recovered during the traffic stop. Edwards testified her testing revealed one item was 7.8 grams of a substance containing cocaine and the other was 0.7 of a gram of a substance containing cocaine. On cross-examination, Edwards acknowledged she performed no tests to determine whether the samples or the packaging had DNA on them.

¶ 11       Defendant testified on his own behalf. He explained that on August 22, 2019, police stopped him on Interstate 55. According to defendant, he was working for Express Lines, a

company that obtains vehicles at auctions and sells them to customers. Because he was having trouble with his own vehicle and needed to attend court in Bloomington, Illinois, his boss told him to take a car that had keys in it from the yard where the business kept vehicles it had obtained. Defendant stated, when he located a vehicle with keys in it, he placed a California license plate on it and drove to court. Defendant asserted this was the first time he had been in or driven the vehicle. During his testimony, defendant identified a copy of the title for the vehicle, which he stated was kept in the glove box. According to defendant, the dealer reassignment indicated the vehicle had been assigned to "Omari," the owner of the business that employed him. A copy of the title, which was entered into evidence, listed "Ian R Lovera" as the owner of the vehicle and indicated the vehicle had been assigned to "The Autobarn LTD."

¶ 12    Defendant acknowledged the vehicle had a sunroof with a shade. He claimed, however, he never manipulated the sunroof, and he believed he never opened the shade. Defendant explained he drove to Bloomington, where he stayed for about a half hour, and was driving back toward the Chicago area when he was stopped. Defendant asserted he did not place the baggies containing cocaine into the area of the sunroof. As to the digital scale, defendant testified he did not know it was in the armrest. He explained the vehicle was a repossession and contained trash and clothing that had not been cleaned out, which was common for auctioned vehicles. On cross-examination, defendant acknowledged he told officers both that he had previously used the scale to weigh his cannabis and the scale was his brother's, but he asserted both claims were lies and he told them so that he could "get home and about my way." However, defendant acknowledged the container containing THC wax was his.

¶ 13    On September 14, 2022, the trial court found defendant guilty of both offenses. The court found the officers testified credibly and defendant's testimony was not credible. After

determining the unlawful possession of a controlled substance count merged with the unlawful possession with intent to deliver a controlled substance count, the court sentenced defendant to six years' imprisonment and one year of mandatory supervised release.

¶ 14 Defendant appealed his conviction without filing a motion to reconsider his sentence. On appeal, defendant's appellate counsel argued all the evidence police obtained during the traffic stop should have been suppressed on the basis Fitzpatrick lacked reasonable suspicion defendant committed a traffic violation and trial counsel was ineffective for failing to raise this argument in his motion to suppress. Appellate counsel also asserted during sentencing, the trial court erroneously considered the threat of harm to be an aggravating factor, and trial counsel was ineffective for failing to object at the sentencing hearing and file a motion to reconsider the sentence.

¶ 15 This court rejected those arguments and affirmed defendant's conviction. *People v. Webb*, 2023 IL App (4th) 220836-U, ¶¶ 58, 70, 72. We determined the arguments defendant sought to raise in suppressing the evidence obtained during the traffic stop would have been meritless, and therefore, trial counsel was not ineffective for failing to raise them. *Id.* ¶ 58. Moreover, we concluded the trial court did not improperly consider the threat of harm as an aggravating factor, and thus, trial counsel was not ineffective for failing to file a motion to reconsider defendant's sentence. *Id.* ¶ 70.

¶ 16 On March 20, 2024, defendant filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). Defendant raised the following claims: (1) the drugs found in the vehicle were illegally obtained because the police had no authority to seize the vehicle, (2) the police improperly prolonged the traffic stop, (3) the inventory search of the vehicle was improper, (4) the State failed to prove him guilty beyond a

reasonable doubt of the charged offenses, and (5) trial and appellate counsel were ineffective for failing to raise the foregoing claims.

¶ 17        On April 23, 2024, the trial court summarily dismissed the postconviction petition. The court determined defendant failed to attach an affidavit or other evidence to his petition in support of the allegations therein. Additionally, the court concluded defendant's claims were procedurally defaulted because they could have been raised on direct appeal and the petition failed to set forth the gist of a constitutional claim and was frivolous and patently without merit.

¶ 18        This appeal followed.

¶ 19                               II. ANALYSIS

¶ 20        On appeal, defendant argues the trial court erred in summarily dismissing his postconviction petition because it raised an arguable claim his appellate counsel was ineffective for failing to argue on direct appeal the evidence was insufficient to convict him of the charged offenses. Defendant asserts, as a result, and in the interest of judicial economy, his conviction should be reversed outright or reduced to simple possession of a controlled substance and the cause remanded for resentencing. In the alternative, defendant requests the cause be remanded for second-stage postconviction proceedings. The State responds the court's summary dismissal of the postconviction petition was proper because defendant's claim of ineffective assistance was frivolous and patently without merit.

¶ 21        The Act gives criminal defendants the ability to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions. *People v. English*, 2013 IL 112890, ¶ 21. A postconviction proceeding is not an appeal from the defendant's conviction and sentence but a collateral proceeding. *Id.* To obtain relief, the defendant must establish he or she suffered a substantial deprivation of his or her federal or state

- 7 -

constitutional rights in the proceedings that resulted in the challenged judgment. *Id.*

¶ 22  Under the Act, the adjudication of a postconviction petition consists of a three-stage process. *Id.* ¶ 23. Here, defendant's petition was dismissed at the first stage. At the first stage, the trial court is charged with reviewing the petition to determine whether it "is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022). Summary dismissal of a petition as frivolous or patently without merit is appropriate when it has no arguable basis in either law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law or fact when it is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* Because most postconviction petitions at the first stage are prepared by defendants lacking legal knowledge or training, the threshold is low. *Id.* at 9. "A petitioner need only allege sufficient facts to state the 'gist' of a constitutional claim for the petition to be advanced to the second stage." *People v. Johnson*, 2021 IL 125738, ¶ 26 (quoting *Hodges*, 234 Ill. 2d at 9). We review the first-stage dismissal of a postconviction petition *de novo*. *Id.* ¶ 28.

¶ 23  Claims alleging ineffective assistance of counsel are assessed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17. Under the *Strickland* standard, "a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Id.* (quoting *Strickland*, 466 U.S. at 687-88). To establish prejudice, a defendant must show, " 'but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different.' " *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 11 (quoting *People v. Houston*, 229 Ill. 2d 1, 4 (2008)). A reasonable probability is a probability "that would be sufficient to undermine confidence in the outcome of the trial." *Id.* A defendant is required to establish both prongs of the *Strickland* standard, and an ineffective assistance claim

must fail if either prong is not satisfied. *Id.* "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶ 24       Where a criminal conviction is challenged based on insufficient evidence, we view the evidence in the light most favorable to the prosecution and consider whether " ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Importantly, the appellate court will not retry a defendant. *Id.* This is because the trier of fact is in the best position to judge the credibility of witnesses. *Id.* at 114-15. A conviction will be reversed only where the evidence was "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of [the] defendant's guilt." *Id.* at 115.

¶ 25       On appeal, defendant argues his petition stated an arguable claim of ineffective assistance of appellate counsel because the record shows the State presented insufficient evidence to prove he knew about the cocaine found in the sunroof of the vehicle, possessed it, or intended to sell it. He asserts had counsel contested the sufficiency of the evidence on direct appeal, his conviction would have been reversed or, at least, reduced to simple possession. Because we conclude the prejudice prong of the *Strickland* standard is dispositive, we address that prong first.

¶ 26       To prove unlawful possession with intent to deliver a controlled substance, the State must establish (1) the defendant had knowledge of the presence of the controlled substance, (2) the controlled substance was in the immediate possession or control of the defendant, and (3) the defendant intended to deliver the controlled substance. *People v. Robinson*, 167 Ill. 2d 397, 407

(1995).

¶ 27　　　Defendant first asserts there was insufficient evidence he had knowledge of the cocaine because he testified he did not manipulate the sunroof where the cocaine was found and the cocaine was not in plain view. Thus, defendant contends, the State's evidence of knowledge was premised solely upon the fact he was driving the vehicle. He asserts knowledge of the cocaine cannot be inferred simply because he had control of the car. See *People v. Carpenter*, 2024 IL App (1st) 220970, ¶ 37 (noting knowledge cannot be inferred simply because a defendant had control over the area where evidence was located). The record, however, refutes defendant's claim knowledge was imputed to him solely because he was driving the vehicle.

¶ 28　　　"Knowledge is rarely proved directly; rather, knowledge is proved by [the] defendant's actions, declarations, or conduct from which an inference of knowledge may be fairly drawn." *People v. Roberts*, 263 Ill. App. 3d 348, 352 (1994). "It is the trier of fact who 'determines the credibility of witnesses, decides what weight to give their testimony, resolves conflicts in the evidence, and draws reasonable inferences from that evidence.' " *People v. Baker*, 2022 IL App (4th) 210713, ¶ 35 (quoting *People v. Swenson*, 2020 IL 124688, ¶ 36). Here, in addition to establishing defendant was driving the vehicle, the State also presented evidence a digital scale with white powder residue was located in the center console. A container of THC wax, which defendant admitted was his, was found in the same area. Additionally, Followell testified, and defendant acknowledged, when asked about the scale, defendant initially told officers he used it to measure cannabis, then later claimed the scale was his brother's and his brother was a cocaine user. Notably, defendant's reference to cocaine occurred prior to Draper's discovery of the baggies of cocaine in the vehicle. The scale, in turn, was found to have a white powdery substance on it. At trial, defendant stated both of his claims to police were lies and he did not know the scale was

- 10 -

in the center console. A trier of fact could reasonably find from this evidence defendant was attempting to deflect any association with the cocaine he knew to be in the sunroof. See *People v. Milka*, 211 Ill. 2d 150, 181 (2004) (stating a false exculpatory statement is probative of defendant's consciousness of guilt). Additionally, the trial court could reasonably determine the close proximity of defendant's THC wax container to the scale made defendant's testimony he did not know about the scale incredible and instead suggested the scale, which contained purported cocaine residue, belonged to defendant. From the foregoing, a trier of fact could reasonably conclude defendant had knowledge of the cocaine recovered from the sunroof. Accordingly, defendant's claim the State failed to present sufficient evidence of his knowledge of the cocaine is unavailing.

¶ 29      Defendant also argues the record shows the State failed to prove he possessed the cocaine. Possession can be either actual or constructive. *Roberts*, 263 Ill. App. 3d at 352. Actual possession requires "actual physical dominion." *Id.* By contrast, constructive possession "exists where there is no actual, personal, present dominion over contraband, but [the] defendant had knowledge of the presence of the contraband, and had control over the area where the contraband was found." *People v. Hunter*, 2013 IL 114100, ¶ 19. Constructive possession "may be inferred if the defendant had exclusive control over the premises where the controlled substance was found." *Roberts*, 263 Ill. App. 3d at 352-53. Defendant contends because the cocaine was not found on his person, the State had to prove he had constructive possession of it. Although defendant was driving the vehicle, he asserts he did not have "regular, ongoing control over" it because the vehicle did not belong to him. Therefore, his "access to the contents of the car was not exclusive" and would not support a finding he constructively possessed the cocaine.

¶ 30      In support of his argument, defendant relies on *People v. Hampton*, 358 Ill. App.

3d 1029 (2005), and *Carpenter*. However, his reliance on these cases is misplaced because neither addressed the issue of control of the area in which contraband was found.

¶ 31     In *Hampton*, the defendant argued the State failed to establish he constructively possessed a firearm located in the glove compartment of the vehicle he was driving because the State failed to prove he had knowledge the gun was there. *Id.* at 1031. The defendant argued because the vehicle belonged to his late brother and it was the first time he had used it, the mere fact he was driving the vehicle was insufficient evidence to satisfy the knowledge component of the constructive possession analysis. *Id.* Importantly, the court stated, "Defendant apparently concedes that the gun in the glove compartment was 'on or about his person,' in that he had exclusive control over the car in which the gun was found." *Id.* Upon examining the knowledge prong, the court agreed the State presented no evidence tending to show knowledge other than the fact the defendant was driving the vehicle, and such evidence was insufficient to prove he knew the firearm was in the glove compartment. *Id.* at 1032-33. Accordingly, the court concluded the State failed to establish the defendant's constructive possession of the firearm. *Id.* at 1033.

¶ 32     Similarly, in *Carpenter*, the defendant argued the State failed to prove his constructive possession of a handgun recovered from between the metal frame and cushioning of the driver's seat of the vehicle he was driving because the State presented insufficient evidence from which a trier of fact could infer he knew the handgun was there. *Carpenter*, 2024 IL App (1st) 220970, ¶¶ 14, 34-35. Notably, the court provided, "Control is not in dispute, nor could it be. [The defendant] was driving the car and had control over the area where the gun was found." *Id.* ¶ 34. Agreeing with the defendant, the court concluded where the balance of the State's evidence regarding knowledge amounted simply to the defendant's presence in the vehicle, a rational trier of fact could not infer he knew about the handgun. *Id.* ¶¶ 35-37, 47. In reaching this determination,

the court noted while ownership of the vehicle could serve as evidence of knowledge of contraband, such evidence was not necessary so long as the State presented evidence from which a rational fact finder could reasonably infer the defendant's knowledge. *Id.* ¶ 37.

¶ 33    However, unlike the defendants in *Hampton* and *Carpenter*, defendant here does not contest on appeal the knowledge prong of the constructive possession analysis. Instead, he argues the State failed to prove he constructively possessed the baggies of cocaine because the "State offered no evidence that [he] had regular, ongoing control over the vehicle." The record refutes this argument. The State presented evidence defendant was the driver and sole occupant of the vehicle at the time of the stop. Additionally, Draper testified the baggies themselves were located on the driver's side of the sunroof, which was consistent with where defendant was sitting. Thus, although defendant presented evidence he did not own the vehicle and had not operated it before, the record clearly shows he nevertheless had exclusive control of the vehicle, and thus, the area where the cocaine was found. *Id.* ¶ 34. Further, even if defendant had contested whether there was sufficient evidence of his knowledge of the cocaine to establish his constructive possession over it, that argument would fail because, as explained above, the State presented sufficient evidence for the trial court to reasonably infer defendant knew of the cocaine. Because the State presented evidence of both defendant's knowledge of the cocaine and his exclusive control of the vehicle, a reasonable trier of fact could have found defendant constructively possessed the cocaine.

¶ 34    Finally, defendant argues the record shows the State presented insufficient evidence to establish he intended to deliver the cocaine. Intent to deliver is generally proven by circumstantial evidence. *Robinson*, 167 Ill. 2d at 408. Factors probative of intent to deliver include

> "whether the quantity of controlled substance in [the] defendant's possession is too large to be viewed as being for personal consumption, the high purity of the drug

- 13 -

confiscated, the possession of weapons, the possession of large amounts of cash, the possession of police scanners, beepers or cellular telephones, the possession of drug paraphernalia, and the manner in which the substance is packaged." *People v. Beverly*, 278 Ill. App. 3d 794, 799 (1996).

While the quantity of a controlled substance alone can be enough to establish intent to deliver, that occurs where the amount of controlled substance could not reasonably be seen as being meant for personal consumption. *Id.* In other words, when the amount of the substance seized might be consistent with personal use, additional evidence of intent to deliver must be shown. *Id.* Whether sufficient evidence of intent to deliver has been presented is determined on a case-by-case basis. *Id.* at 799-800.

¶ 35 Defendant contends the State presented insufficient evidence to establish the quantity of cocaine found in this case was indicative of an intent to sell, as opposed to his keeping it for personal use. He asserts additional circumstantial evidence was required since the only evidence tending to show he intended to deliver the cocaine was the testimony of Draper, who was not certified as an expert witness, claiming the amount recovered suggested an intent to sell.

¶ 36 Initially, we note that defendant seems to suggest Draper's testimony on this point should not be viewed as persuasive because Draper was not certified as an expert witness. However, defendant raised no objection to Draper's testimony at trial, nor did defendant argue in his postconviction petition his trial or appellate counsel were ineffective for failing to raise the issue. Accordingly, defendant may not now claim for the first time on appeal that Draper's testimony was improper. *People v. Cathey*, 2012 IL 111746, ¶¶ 20-21; see *People v. Smith*, 2023 IL App (1st) 221496, ¶ 23 ("A defendant may not raise claims for the first time on appeal from the trial court's dismissal of his postconviction petition.").

¶ 37    As to his sufficiency of the evidence argument, defendant cites several cases for the proposition "the possession of a small amount of drugs," without more, cannot support a finding that he intended to deliver cocaine. See, *e.g.*, *People v. Nixon*, 278 Ill. App. 3d 453, 457 (1996) (holding evidence the defendant possessed 6.6 grams of cocaine was insufficient where no other supporting evidence was presented regarding intent to deliver); *People v. Rivera*, 293 Ill. App. 3d 574, 576-77 (1997) (holding one package of 26.8 grams of cocaine was insufficient where there was no evidence the defendant also possessed weapons, cash, or paraphernalia associated with the selling of cocaine); *People v. Ellison*, 2013 IL App (1st) 101261, ¶¶ 15, 26-27 (stating while evidence was presented that 3.112 grams of cocaine was packaged in several small bags, this evidence alone was insufficient to show an intent to deliver). However, these cases are distinguishable because the State presented evidence of intent beyond the mere amount of cocaine recovered.

¶ 38    Here, Draper testified cocaine sales in his experience involved amounts as low as 0.4 or 0.5 of a gram, which he agreed was "consistent with use of cocaine." He explained he recovered two baggies from the sunroof of the vehicle, which Edwards confirmed contained 7.8 grams of a substance containing cocaine and 0.7 of a gram of a substance containing cocaine, respectively. Draper agreed the total amount of cocaine recovered was indicative of the sale of cocaine. A trier of fact could reasonably find, in light of evidence showing approximately one-half of a gram of cocaine was an amount consistent with use, defendant's possession of a total of 8.5 grams packaged in two baggies was a quantity exceeding that solely meant for personal consumption and indicative of an intent to deliver. See, *e.g.*, *People v. Ballard*, 346 Ill. App. 3d 532, 541-42 (2004) (finding intent to deliver established where evidence showed 18 baggies contained a total of 5.1 grams of cocaine). However, even assuming this amount could be viewed

as designed for personal consumption, the trial court still could have reasonably determined defendant intended to deliver the cocaine. "[O]nly one factor indicating intent to deliver is needed in addition to the drugs packaged for delivery." *Id.* at 541. In this case, Fitzpatrick and Followell testified a digital scale was located in the vehicle, which Followell stated had a white powdery residue on it. A scale is "properly viewed as drug paraphernalia." *People v. Romero*, 189 Ill. App. 3d 749, 756 (1989). Where defendant possessed cocaine packaged in separate plastic bags and drug paraphernalia in the form of a scale, the court could consider these factors together and reasonably infer an intent to deliver. Accordingly, defendant's argument is unavailing.

¶ 39       Given the foregoing, we conclude, even if appellate counsel had contested the sufficiency of the evidence on direct appeal, such a claim would have been meritless. Defendant's ineffective assistance claim, therefore, fails because he is unable to show he suffered prejudice. Because defendant cannot satisfy the prejudice prong of the *Strickland* analysis, we need not address the deficiency prong. Accordingly, we conclude the trial court did not err in summarily dismissing defendant's postconviction petition.

¶ 40                                III. CONCLUSION

¶ 41       For the reasons stated, we affirm the trial court's judgment.

¶ 42       Affirmed.